# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

IN RE APPLICATION OF                          )
the *Comité Economique et Social Central*      )
*d'Office Depot France*                        )
                                               )   CASE NO._____
                          and                  )
                                               )
*Alter*                                        )
                                               )
pursuant to 28 U.S.C. § 1782 For Judicial      )
Assistance in Obtaining Evidence From THE      )
ODP CORPORATION For Use In a Foreign           )
Tribunal                                       )

**DECLARATION OF CELINE PARES IN SUPPORT OF COMITÉ ECONOMIQUE ET SOCIAL CENTRAL D'OFFICE DEPOT FRANCE'S AND ALTER'S EX PARTE APPLICATION FOR JUDICIAL ASSISTANCE IN OBTAINING EVIDENCE FOR USE IN A FOREIGN TRIBUNAL PURSUANT TO 28 U.S.C. § 1782**

I, the undersigned, Celine Pares, under oath and penalty of perjury, pursuant to 28 U.S.C. § 1746, and duly authorized, declare the following:

1.      I am over the age of 18 and provide this Declaration based on my own personal knowledge. I am fluent in English and make this Declaration without the aid of a translator.

2.      I am a member of the Paris Bar and I represent the Comité Economique et Social Central d'Office Depot France (the "**Works Council**"). I am also duly authorized by Alter to give this Declaration on its behalf.

3.      I submit this Declaration in support of the Works Council's and Alter's ("**ALTER**")'s Ex Parte Application for Judicial Assistance in Obtaining Evidence for Use in a Foreign Tribunal Pursuant to 28 U.S.C. § 1782 (the "**Application**").

1



4.      Under French law, in every company where there are more than 11 employees, the company has to organize elections by which the employees elect representatives. These representatives constitute the economic and social committee of the company. In large companies such as OFFICE DEPOT FRANCE, there are several economic and social committees that elect a central social and economic committee. One of the Applicants here, the Works Council, is OFFICE DEPOT FRANCE's central social and economic committee.[1]

5.      Pursuant to article L2312-8 of the French Labor Code, the Works Council's mission is to ensure the collective expression of employees so that their interests are constantly taken into account in decisions relating to the management and economic and financial development of the company, the organization of work, vocational training and production techniques.

6.      ALTER is the certified public accountant designated to assist the Works Council with its official duties and will assist the Works Council in using the evidence sought through this Application as described below.

7.      On December 31, 2016, OFFICE DEPOT INC. sold its European business (including OFFICE DEPOT FRANCE) to the AURELIUS group. Following the acquisition, between 2017 and 2020, AURELIUS engaged in a series of restructuring operations that included:

-       restructuring the share capital of OFFICE DEPOT FRANCE so that it be wholly owned by a holding company named OD PARTICIPATIONS (FRANCE) SAS;

-       reducing the share capital of OFFICE DEPOT FRANCE by offsetting a 70 million euros claim it had against OD PARTICIPATIONS (FRANCE) SAS, thereby forgoing a substantial cash assets; and

_____

[1]      Relevantly, works councils are not unions, as they are composed of elected representatives that may belong to different unions, or to no union at all.

2

- directing OFFICE DEPOT FRANCE to enter into a management fee agreement and trademark license agreements, thereby increasing on the expenses of OFFICE DEPOT FRANCE (the "**Restructuring Operations**").

8. Concerned with the financial health of OFFICE DEPOT FRANCE, on February 6, 2019, the Works Council alerted[2] OFFICE DEPOT FRANCE's management of its concerns. Pursuant to article L2323-50 of the French labor Code: "when the Works Council is aware of facts that can affect in a worrying way the economic situation of the company, it can ask the employer to give explanations." Despite the Works Council's attempt to exercise its right to obtain information pursuant to article L2323-50 of the French Labor Code, OFFICE DEPOT FRANCE refused to produce certain documents requested by the Works Council.

9. The Works Council then filed an action on May 20, 2019 before the District Court of Senlis, France, against OFFICE DEPOT FRANCE in order to obtain certain documents and information in relation to the Restructuring Operations and financial situation of OFFICE DEPOT FRANCE. Specifically, the documents requested in the action included the schedules and attachments to the Sale and Purchase Agreement dated November 22, 2016 (as amended on December 31, 2016) between OFFICE DEPOT FOREIGN HOLDINGS LP, LLC, OFFICE DEPOT FOREIGN HOLDINGS GP, LLC, OFFICE DEPOT, INC., AURELIUS RHO INVEST NL DS B.V., and AURELIUS RHO INVEST NL TWO B.V. relating to the transfer of the European business operations of OFFICE DEPOT INC (the "**Full SPA**"), which include but are not limited to :

---

[2] The "alert right" or "Droit d'Alerte" is the process by which a works council voices its concerns on the financial and economic health of the company and subsequently requests information. As part of this process, the works council can appoint a certified public accountant to review any and all information relevant to the company including information of parent companies or subsidiaries. The company has the obligation to provide the documents requested by the CPA.

3

- Attachment 5 - IP Assignment Agreements

- Attachment 6 - Trade Mark Co-Existence Agreement

- Attachment 7 - Office Max Trade Mark Licence Agreement

- Attachment 8 - Pre-Completion Restructuring Steps Pian ; and

- The documents incorporated by reference, included in the folder "12.7.10 of the Data Room Information".

10.     On June 25, 2019, the District Court of Senlis, France ordered OFFICE DEPOT FRANCE to produce a number of documents to the Works Council, including the Full SPA. A true and correct copy of the June 25, 2019 Order is attached as **Exhibit 1**.

11.     In its June 25, 2019 Order, the District Court of Senlis held that ALTER had properly intervened in the action, because it had an "interest in supporting the main claim presented by the [Works Council] of the company OFFICE DEPOT FRANCE." Ex. 1 at 8. The District Court of Senlis went on to explain that, when a company is part of a group, ALTER "must have access to the information held by other companies of the group, even if they are located abroad." Id. at 11. Further, ALTER "remains the only person competent to determine the documents useful for his mission which may be extended to the persons or entities controlling the company and to the group in which the company is included." Id. at 15.

12.     OFFICE DEPOT FRANCE failed to comply with ALTER's request for, among other things, the Full SPA, see id. at 15, and did not produce the Full SPA on the ground that it was not in its possession.

13.     In addition, on May 6, 2019, concerned with the use of OFFICE DEPOT FRANCE's assets, the Works Council filed a criminal complaint with the Attorney General of Lille (*Procureur de la République près le Tribunal Judiciaire de Lille*) for misuse of the

4

Company's assets. The investigation of the Attorney General of Lille is currently ongoing. The Attorney General has asked the Central Office against Corruption and Financial and Tax Infractions (*OCCLIFF or Office Central de Lutte Contre la Corruption et Contre Les Infractions Financières et Fiscales*) to assist in his investigation. During the Attorney General's investigations, the Works Council, as the complaining party, has the right to present additional evidence to support its complaint and the period to do so has not closed. The Full SPA sought through this Application is relevant to the criminal complaint under investigation by the Attorney General in that it will evidence the financial situation of OFFICE DEPOT FRANCE prior to the acquisition by AURELIUS, and is further expected to allow the Works Council with Alter's assistance to bolster its allegations that AURELIUS significantly increased the cost structure of OFFICE DEPOT FRANCE and siphoned money out of it by imposing improper management and trademark license fees. Depending on the outcome of the Attorney General's investigation, the Works Council may institute criminal proceedings against any party or parties found to have misused company assets before the Criminal Court of Lille (*Tribunal Correctionnel de Lille*).

14. Thirdly, on February 3, 2021, OFFICE DEPOT FRANCE filed for bankruptcy before the French Commercial Court of Lille (*Tribunal de Commerce de Lille*). The Works Council is a party to these proceedings, as a body representing employee-creditors, and can submit evidence and testimony to the French Commercial Court of Lille. Pursuant to articles L622-10, and L626-9 of the French Commercial Code, the Works Council has been heard by the Commercial Court on April 16, 2021. The Works Council voiced its concerns about how the AURELIUS group has used the assets of OFFICE DEPOT FRANCE. The next hearing of the French Commercial Court of Lille (*Tribunal de Commerce de Lille*) is to be held on May 24, 2021, and other hearings are expected to follow. Through the underlying Application, the Works Council seeks to obtain the

5

Full SPA with the assistance of the U.S. Court in order to present it before the Commercial Court to support its existing claims in the bankruptcy proceedings. The Full SPA including its Schedules will allow the Works Council and Alters to better evaluate AURELIUS' responsibility in the financial difficulties of OFFICE DEPOT FRANCE and will allow the French Commercial Court in Lille to decide whether AURELIUS can present a plan for the restructuring of OFFICE DEPOT FRANCE.

15.     Given OFFICE DEPOT FRANCE claimed not to be in possession of the Full SPA, the Works Council and Alter have decided to seek this document directly from the ODP CORPORATION, who is a signatory to the Full SPA and therefore must have a copy in its possession, custody, or control. The need for the Full SPA and the reasonableness of the proposed request to ODP Corporation is supported by the June 25, 2019 Order of the District Court of Senlis attached as Exhibit 1.

16.     The proceedings pending before the District Court of Senlis (¶¶9-11), the ongoing criminal investigation stemming from the Works Council's complaint with the Attorney General of Lille (¶13), and the pending bankruptcy proceedings before the French Commercial Court of Lille (¶14) are collectively referred to as the "**Foreign Proceedings**".

17.     I am informed by Florida counsel that the Court will consider certain discretionary factors in determining whether to grant Applicants' Application. I understand these considerations come from the United States Supreme Court decision Intel Corporation v. Advanced Micro Devices, Inc., and the cases interpreting that decision. I have reviewed the four discretionary considerations and I set out the facts relevant to each below.

18.     The ODP CORPORATION is found in this district, because it has its principal place of business at 6600 North Military Trail, Boca Raton, Florida. The ODP CORPORATION's

6

Form 8K Filing with the U.S. Securities and Exchange Commission, attached as **Exhibit 2**, provides that the ODP CORPORATION's Principal Executive Offices are located at the aforementioned Boca Raton, Florida address. Further, the ODP CORPORATION does not appear to operate in France and will likely not be subject to the jurisdiction of any French court.

19. The ODP CORPORATION is not a party to any of the Foreign Proceedings and is not expected to become a party to any of the Foreign Proceedings. Indeed, absent the instant Application, the evidence would almost certainly remain outside the reach of the French courts. This is especially true where OFFICE DEPOT FRANCE, a party to one of the Foreign Proceedings, already failed to comply with the District Court of Senlis's order to produce the Full SPA alleging that it is not in possession of the Full SPA.

20. Further, there is no indication the French courts described in this Declaration would not be receptive to the documentary evidence sought through the instant Application. Such evidence is likely admissible in the French courts, and the Application does not circumvent any proof-gathering restriction under French law. Specifically, no French law, rule of evidence, or rule of civil or criminal procedure prohibits the filing of this application or the request made therein.

21. The discovery sought to be served on the ODP CORPORATION is not intrusive or unduly burdensome. Applicant's request for documentary evidence is limited to one document: the Full SPA, including its schedules and exhibits, which should be in the possession, custody, and control of the ODP CORPORATION as one of the parties to the Full SPA.

22. Finally, as a French attorney I can affirm that I will be able to produce for my clients the Full SPA in each of the proceedings mentioned above, in accordance with applicable French rules of civil procedure.

7

CP

Paris le          19.05.2021

Céline Pares
Avocat au Barreau de Paris
23 Rue des Martyrs,
75009 Paris

# EXHIBIT 1

Minute No. 19/00135
**Hearing of 11/06/2019**
**Deliberated on 25/06/2019**

**N° RG 19/00136 - N°
PORTALIS
DBZW-W-B7D-C7l 5**

*Interim order*

CASE:

**COMITÉ CENTRAL
D'ENTREPRISE
OFFICE DEPOT FRANCE**

**VS**

**S.A.S. OFFICE DEPOT
FRANCE
Company ALTER**

**PRESIDING:**
Arnaud BORZEIX

**Clerk:**
Aurore COINON

Original on 25/06/19
to Me PARES
Original on 25/06/19
to Me PRADAL
Copies on on 25/06/19
to Me PARES
Copies on on 25/06/19
to Me PRADAL
Copies on on 25/06/19
to Me TERNISIEN

**FRENCH REPUBLIC
IN THE NAME OF THE FRENCH PEOPLE
TRIBUNAL DE GRANDE INSTANCE DE SENLIS**

---

### INTERIM ORDER

---

[Stamped Seal from the Court]

*DELIBERATED **ON THE TWENTY-FIFTH OF JUNE TWO
THOUSAND AND NINETEEN***
Pleadings of: June 11th , two thousand and nineteen

BETWEEN:
**PLAINTIFF**

**OMITÉ CENTRAL D'ENTREPRISE OFFICE DEPOT FRANCE**,
whose head office is located at 126, Rue du Poteau - 60300 SENLIS -
FRANCE

*represented by Me Céline PARES, member of the PARIS bar
association,*

AND

**DEFENDANT**

**S.A.S. OFFICE DEPOT FRANCE,**
whose head office is located at 126, Rue du Poteau - 60300 SENLIS -
FRANCE

*represented by Me Laetitia TERNIS/EN, member of the PARIS bar
ASSOCIATION, of the AARPI JEANTET,*

**VOLUNTARY INTERVENTION**:

**ALTER**,
a limited liability accounting company, whose head office is located at
67 rue Victor Hugo - 71000 MACON – FRANCE,

*represented by Me Philippe PRADAL, member of the PARIS bar
association, from the firm ADEAL,*

## STATEMENT OF THE DISPUTE

The company OFFICE DEPOT FRANCE whose head office is located in SENLIS (60), 126 avenue du Poteau, is a company specialized in the distribution of office supplies and furnitures.

At its meeting of January 22, 2019, the Comité central d'entreprise [central works council], hereinafter referred to as the CCE, of the company OFFICE DEPOT submitted to the latter a request for explanations, pursuant to Article L. 2323-50 [of the French Labor Code], and requested answers to the questions asked before February 6, 2019, expressing its concern "*about the situation of the company and the management of the company by its directors*", specifying that "*the information provided in dribs and drabs concerning the sale of the company's real estate assets and the financial flows between the various structures of the group constitute elements that may have a worrying impact on the economic situation of the company*".

On February 6, 2019, at an extraordinary meeting, the CCE decided to implement the economic alert procedure, considering that the information communicated by management was "*far from answering with sufficient precision the questions raised by the CCE. In particular, the nature of the facts reported was very vague, the investment plan was just as vague and a budget for the relocation had not been drawn up*" and that it was "*not likely to allay the CCE's fears about the future of the company and its jobs*". The elected members of the CCE thus resolved "*to trigger the procedure for the right of alert*" and to be assisted by the "accounting firm EXPLICITE, located at 3 rue Bayard in LILLE".

In a deliberation on March 14, 2019, the CCE decided to withdraw the mandate given to the firm EXPLICITE and to entrust it to a new chartered accountant, the firm ALTER EXPERTISES, 67 rue Victor Hugo in Macon, "*in order to help them pursue the right to alert launched by the elected members of the comité central d'entreprise on February 6, 2019*". The deliberation specified that it would be up to "*management to send the documents requested at the first request of ALTER, as well as all the documents previously sent to EXPLICITE regarding this right of alert*".

On March 15, 2019, the company's chartered accountants sent a letter to the president of the comité central d'entreprise [CCE] of OFFICE DEPOT FRANCE detailing "*the terms and conditions of their intervention*" in the context of the mission entrusted to them by virtue of the economic alert procedure, aimed at drawing up "*a report that would enable them to understand and assess the financial, economic, social and strategic situation of the company, as well as its perspectives*", and to "*deal with the preoccupying facts raised by the CCE:*
*1) Worrying elements concerning the real estate assets with impact on the economic future of the OD France:*
*In 2008, the operating structures of OD, which became OD France, had real estate assets consistiting of at least: Land properties (Senlis, the warehouse at Saint Martin de Crau, Call de Nîmes), Platforms (Eysines, Ormes, Souffleweyersheim, Noyal sur Vilaine, Vénissieux, Agence Vénissieux), Stores (Éragny, Vénissieux, Créteil, Grande Armée, Souffleweyersheim, Englos, Nîmes, Montpellier, Mérignac, Labège, Ballainvilliers, Rouen, Reims). Today, you are telling us that there are only 9 stores and SENLIS held by OD Participations, it being specified that the CCE has never been consulted on these sales of real estate, which of course constituted an interference with its operation.*
*When, how and on what terms did the operating subsidiaries sold each of these properties, to whom, on what date and for what amount?*
*Details by building/platform and stores?*

*2) Financial flows between companies of OD Group*
*What is the complete legal structure of the shareholding beyond EV Holding, which is in the Netherlands?*
*What are the agreements that bind OD France, the operating subsidiary that supports the group with the other entities of the group?*

2

*Why was OD Participations never able to repay 59 million to OD France, when OD Participations owned the buildings in SENLIS and charged ODBS 3 million per year for the use of the premises (Minutes January 2019 and Minutes December 2017)?*

*Why did you agree to cancel this debt? What is OD France's benefit in this operation? without cancelling the rents and transferring the property of SENLIS, which is worth at least 20 M, at this time?*
*Did the auditors validate this operation without reservations?*
*The elected representatives request the auditors' report on OD France and OD Participations for the years 2017/2018.*
*What are the financial flows that link OD France to OD Participations? (re-invoicing the salaries of CEOs, CFOs, and other senior executives...) and to OD EUROPE, and to other entities of the group?*
*The elected representatives request the complete accounts of the last three years of the group's entities that have financial flows with OD France and the details of those flows.*
*Why are the holding companies located in the Netherlands?*
*What is invoiced to OD France?*
*What is the purpose of the first two companies in the Netherlands (HETEYO Holding BV and OD Operations Holding BV)?*
*Today, you announce that OD France has a deficit of 12 million euro...*
*How could it be profitable with costs borne by it alone from all the invoices coming from all the companies in the Group and no one to defend its interests?*
*Is the deficit of the OFFICE DEPOT France the result of a financial organization of the group?*
*Amount of the sale, fate of the sale price and rent price in the hypothesis of a sale of the Senlis real estate*".

On the same day, the accounting firm ALTER requested the following documents from management:
*1. Share Purchase Agreement of Office Depot Europe by Office Depot Inc. to Aurelius Equity Opportunities SE & Co with the appendices*
*2. Office Depot Europe's 5-year business plan prepared by Aurelius, with details for Office Depot France (strategic plan, projected income statement, assumptions used, investment and financing plan)*
*3. OD France recovery plan and follow-up to date including:*
> *a) Actions planned, implemented and remaining to be implemented*
> *b) Operational difficulties encountered in the application of the recovery plan (including supply shortages)*
> *c) 3-5 year forecasted income statement consolidated and by activity*
> *d) Income statement 2016, 2017 and 2018 consolidated and by activity*
> *e) Consolidated 3-5 year forecasted financing plan (with details of the main investments)*
> *f) Funding Schedules for the years 2016, 2017 and 2018 (with details of major investments)*

*4. Market study for the sale of office equipment and consumables in France, including*
> *a) The situation of the main competitors*
> *b) OD's estimated market share over the last 3 years*
> *c) 3-year outlook*

*5. Accounting documents concerning OD France for the years 2016, 2017 and 2018*
> *a) Complete tax packages*
> *b) General ledgers*
> *c) N°DAS2 forms*
> *d) Auditors' report*
> *e) Management report*
> *f) Minutes of the General Assembly meetings*
> *g) Factoring service contracts, if any*

3

*6. Accounting records regarding OD Business Solutions for the fiscal years 2016 and 2017*
*a) Complete tax packages*
*b) General ledgers*
*c) N°DAS2 forms*
*d) Auditors' report*
*e) Management report*
*f) Minutes of the General Assembly meetings*
*g) Factoring service contracts, if any*
*7. Accounting records regarding OD Participations for the years 2016, 2017 and 2018*
*a) Complete tax packages*
*b) General ledgers*
*c) N°DAS2 forms*
*d) Auditors' report*
*e) Management report*
*f) Minutes of the General Assembly meetings*
*8. Statutory auditors' reports with appendices (including income statement, balance sheet, allocation of net income) for the years 2016, 2017 and 2018 of the following companies:*
*a) Heteyo Holding BV*
*b) Office Dépôt France Holding Two BV*
*c) Office Dépôt France Holding BV*
*d) ODE Holding BV*
*e) OD intUK Ltd*
*f) Office Depot Europe Holding GmbH*
*g) Aurelius Equity Opportunities SE & Co*
*9. Transfer pricing agreements between OD France and related companies (both those in force before the takeover by Aurelius and those effective since), or failing that, documents detailing:*
*a) The nature of the services provided/received, with details on the operation of the "European rebates"*
*b) The companies involved*
*c) How transfer prices were calculated*
*d) Breakdown of total costs by country/entity*
*10. Documents sent to the auditor justifying the waiver by OD France of a €59 million debt obligation in favor of OD Participations*
*11. Real estate expert's reports concerning the valuation of the real estate (land, platforms, stores) sold since the takeover by Aurelius*
*12. OD France's social report for the years 2016, 2017 and 2018*
*13. OD BS's  social report for the years 2016 and 2017*
*14. Access to the BDES [economic and social database]*".

By emails dated March 26, April 4, April 19, and May 14, 2019, ALTER CPA renewed its requests for missing documents and made several requests for information.

On May 2, 2019, ALTER prepared a progress report stating that it was not presenting the final version of its work, but "*an analysis of OD France's situation based on information that was very incomplete compared to [its] requests received to date*," and including "*requests for updated information as of May 2, 2019 listed in Appendix 1*".

By bailiff's writ of May 20, 2019, the CCE of OFFICE DEPOT FRANCE summoned SAS OFFICE DEPOT FRANCE before the President of the Tribunal de Grande Instance of SENLIS, ruling in summary proceedings, on the basis of Articles L. 2323-50, L. 2323-51, L. 2325-35, L. 2325-36, L. 2323-37 of the Labor Code, L. 233-3, L. 823-13 and L. 823-14 of the Commercial Code and article 809 of the Code of Civil Procedure, in order to obtain :
- declaration that the request of the CCE of OFFICE DEPOT France was admissible and well-founded in its action and upheld,
- declaration that the refusal to communicate the documents to the CCEs accountant is a manifestly unlawful disturbance that must be stopped.

4

As a result,

- Order the company OFFICE DEPOT FRANCE under penalty of 10.000 € per day of delay and per document within 8 days from the delivery of the decision to intervene to communicate to the accounting firm ALTER:
- *The Transfer Agreement between OD INC and AURELIUS from Office DEPOT Europe and its appendices*
- *OFFICE DEPOT France's recovery plan, which was planned at the time of the purchase on January 1, 2017, including the projected 3-5 year income statement consolidated by activity, the 2016 income statement, the projected 3-5 year financing plan (with details of the main investments) and the 2016, 2017 and 2018 financing table (with details of the main investments)*
- *OFFICE DEPOT France's final accounts for the 2018 financial year (complete tax returns 2018, general ledgers 2018, auditors' report 2018 and management report 2018)*
- *OD PARTICIPATIONS' final accounts for the fiscal year 2018 (complete tax returns 2018, general ledgers 2018, auditors' report 2018 and minutes of the 2018 AGM meetings)*
- *The statutory auditors' reports with the appendices, mandatory in European countries (including income statements, balance sheet, allocation of net income) for the financial years 2016, 2017 and 2018 of the holding companies of OFFICE DEPOT France (Heteyo holding BV, Office Depot France Holding two BV, Office Depot France Holding BV, ODE Holding BV, OD Int UK Ltd, Office Depot Europe Holding Gmbh and Aurelius Equity Opportunity SE & Co)*
- *Transfer pricing agreements between OFFICE DEPOT France and related companies and in particular the full contracts with ECIT and GTM for 2017 and 2018 and OFFICE DEPOT International BV.*
- *OFFICE DEPOT France's cash position as of the most recent date (2019) and cash flow forecast until the end of 2019*
- *OFFICE DEPOT France 2019 and 2020 budgets*
- *The audit report conducted in 2019 by Eight Advisory on OFFICE DEPOT France*
- *Letters of Engagement and invoices corresponding to €1.7M invoiced to OD Participations by the firm Alvarez & Marsal (the company of the former head of OFFICE DEPOT France until April 2019) and audit reports of the firm ALVAREZ & MARSAL*
- *The statutory auditors' reports with the appendices (balance sheets, income statements and allocation of income) for the financial years 2016, 2017 and 2018 of the companies of the AURELIUS group that have contracted with OFFICE DEPOT France, including GTM and ECIT*
- *Communication of the cost/performance comparison between the former IBM provider and GETRONICS*
- *As well as the answers (documents) to the following questions:*
- *With which other companies of the AURELJUS group has OFFICE DEPOT France concluded commercial service contracts?*
- *Has OFFICE DEPOT France won any contracts with the companies of the Aurelius group?*
- *Which company was AURELIUS in talks with for a possible sale of the French OFFICE DEPOT companies*
- *Communication of the letter from OD INC to OFFICE DEPOT following the sale of its stake.*

- reserve the right to impose a penalty in case of non-execution or partial non-execution of the decision to intervene.
- order OFFICE DEPOT FRANCE to pay the applicants the sum of € 3,600 in application of article 700 of the Code of Civil Procedure.
- order OFFICE DEPOT FRANCE to pay the costs of the present proceedings, including the costs of service and enforcement.

At the hearing of May 28, 2019, the OFFICE DEPOT FRANCE CCE, represented by its counsel, reiterated its claims. In particular, it outlined the context that led it to trigger the alert procedure, its concerns about the survival of the company while it had been announced by management that OFFICE DEPOT FRANCE's current cash position was insufficient to get through the summer without the sale of the Senlis site and that the AURELIUS Group, which acquired the French operating subsidiaries on January 1, 2017, OFFICE DEPOT FRANCE and OD BS for 1 euro to the American shareholder OFFICE DEPOT INC, would be known for a practice of taking over a company and draining its cash flow before it was liquidated and the fate of the employees was left to the care of the FNGS [Fond national de garantie des salaires] and POLE EMPLOI.

5

The OFFICE DEPOT FRANCE CCE indicated that it had received several documents from SAS OFFICE DEPOT FRANCE in the interval between the summons and the hearing, but maintained its request to order the defendant company to communicate to it all of the appendices to the transfer contract between OD INC and AURELIUS  regarding Office DEPOT, the provisional financing plan with details of the main investments, the final OFFICE DEPOT FRANCE accounts for 2018, the reports of the auditors of the holding companies of OFFICE DEPOT FRANCE, a statement of cash flow  for OFFICE DEPOT FRANCE and related companies, and not just a projection curve, the 2019 and 2020 budgets for OFFICE DEPOT FRANCE, the audit report carried out in 2019 by Eight Advisory on OFFICE DEPOT FRANCE, the audit reports of the firm ALVAREZ ET MARSAL, the auditors' reports with the appendices of the companies of the  AURELIUS group, specifying that the accounts of OFFICE DEPOT INTERNATIONAL BV are missing, the cost/service comparison between the former service provider IBM and GETRONICS, stating that the figures handed to them lacked any explanation of the services.

By written submissions at the hearing, the company ALTER requested its voluntary intervention in the present proceedings, that the main request presented by the CCE of the company OFFICE DEPOT FRANCE be granted and that the company OFFICE DEPOT FRANCE be ordered to pay the company ALTER the sum of 1,500 euros in accordance with article 700 of the Code of Civil Procedure, as well as the entire costs of the proceedings. The company argued in particular that within the framework of the mission which was entrusted to him, the Chartered Accountant of the CCE has the same powers of investigation as the auditor since he can, like the latter, be communicated all the documents which he considers useful for the exercise of his mission but also analyze the economic aspects of the activity of the company, its future prospects and its social, economic and financial environment, that his investigations can extend to the parent companies as well as to the subsidiaries, that the Chartered Accountant alone assesses the usefulness of the documents he requests. The company ALTER stated that it could not be opposed to the confidentiality of the contract of transfer requested in that the chartered accountant is held to an obligation of secrecy and discretion and subjected to the professional secrecy and maintained that the refusal opposed by the company OFFICE DEPOT FRANCE to communicate the requested documents would be constitutive of a manifestly illicit disorder.

SAS OFFICE DEPOT FRANCE, in its oral submissions at the hearing, requested that the court declare that there is no need for an interim injunction and, in the alternative, that the CCE of OFFICE DEPOT FRANCE and ALTER be dismissed from the case and, in any event, that the CCE and ALTER be ordered to pay the sum of 5,000 euro under Article 700 of the French Code of Civil Procedure and to pay the entire costs of the proceedings. SAS OFFICE DEPOT FRANCE stated that there can be no manifestly unlawful disturbance and therefore no grounds for summary proceedings in the absence of a refusal to disclose documents from the company OFFICE DEPOT FRANCE. It argued that it is up to the judge to verify the necessity of the requested documents with regard to the mission of the expert and that the requested documents must have a link with the mission of the company ALTER within the framework of the right of alert.

At the end of the hearing, SAS OFFICE DEPOT FRANCE undertook in the minutes drawn up by the clerk of the hearing to provide the necessary efforts to obtain the requested documents, without however being able to commit itself to an obligation of result. The case was adjourned to the hearing of June 11, 2019.

At the hearing of June 11, 2019, the CCE of OFFICE DEPOT FRANCE argued that the principle of contradiction had not been respected with regard to the responsive submissions communicated by SAS OFFICE DEPOT FRANCE that same day at 11:25 a.m. It also requested that the documents communicated by the defendant, which did not correspond to the schedule, be rejected or that a clear and complete schedule of communication of documents be provided during the deliberation.

The company ALTER also invoked a violation of the principle of contradiction due to the late communication of the defendant's documents at 11:25 a.m., requesting that these documents be set aside, unlike, however, the documents communicated by SAS OFFICE DEPOT FRANCE. It maintained that the cash flow of the latter would be alarming.

At the end of the hearing on June 11, 2019, the OFFICE DEPOT FRANCE CCE and ALTER indicated that they no longer requested communication to the ALTER firm by SAS OFFICE DEPOT FRANCE:
- of the assignment agreement from OFFICE DEPOT INC to AURELIUS of OFFICE DEPOT EUROPE, provided prior to the May 28, 2019 hearing,
- of the 3-year turnaround plan of OFFICE DEPOT FRANCE, foreseen at the time of the purchase at January 1, 2017, provided prior to the May 28, 2019 hearing,
- the final OFFICE DEPOT FRANCE accounts for the 2018 financial year (complete tax returns for 2018, general balances for 2018, auditors' report for 2018 and management report for 2018), which will be provided to the chartered accountant after validation by the auditors, with the CCE and the expert indicating that they will rely on the diligence of the latter and the commitment of the company's management to provide them as soon as they are validated,
- the final OD PARTICIPATIONS financial statements for the 2018 financial year (complete tax returns for 2018, general balance sheet for 2018, auditors' report for 2018 and minutes of the 2018 AGM meetings), which will be provided to the certified public accountant after validation by the statutory auditors, with the CCE and the certified public accountant indicating that they will rely on the latter's diligence and on the commitment of the company's management to provide them upon validation
- Transfer pricing agreements between OFFICE DEPOT FRANCE and related companies and in particular the complete agreements with ECIT and GTM for 2017 and 2018 and OFFICEDEPOT International BV, provided prior to the May 28, 2019 hearing,
- OFFICE DEPOT France's cash position as of the most recent date (2019), provided prior to the May 28, 2019 hearing,
- the engagement letters and invoices regarding the 1.7 million euro invoiced to OD Participations by the firm Alvarez et Marsal (the CCE draws attention in its summons to the fact that this was the company of the former director of OFFICE DEPOT FRANCE until April 2019).

On the other hand, the CCE and ALTER maintain their request to order OFFICE DEPOT FRANCE, under penalty, to communicate to ALTER's accountants:
- all documents attached to the transfer contract from OFFICE DEPOT INC to AURELIUS  regarding OFFICE DEPOT EUROPE,
- the details of the main investments in the 3-year recovery plan, carried out over the years 2016, 2017 and 2018 and the financing table as of January 1, 2017, i.e. the entire forecast at the time of the purchase, and not just the "realized" as communicated by the defendant company
- the statutory auditors' reports with the appendices to the financial statements, which are mandatory in European countries (income statements, balance sheet, allocation of net income in particular), for the 2016, 2017 and 2018 financial years of the holding companies of OFFICE DEPOT FRANCE (Heteyo holding BV, Office Depot France Holding two BV, Office Depot France Holding BV, ODE Holding BV, OD Int UK Ltd, Office Depot Europe Holding Gmbh and Aurelius Equity Opportunity SE & Co),
- cash flow forecasts until the end of 2019, in the form of an official document with an official stamp from the management of OFFICE DEPOT FRANCE, i.e. a cash flow forecast table for 2019,
- OFFICE DEPOT France's budgets for 2019 and 2020,
- the audit report conducted in 2019 by Eight Advisory on OFFICE DEPOT France,
- the audit reports of the ALVAREZ and MARSAL firms, and not the simple "draft" of February 2017 transmitted for the June 11, 2019 hearing, which would be "a simple project" according to the CCE,
- the auditors' reports with the appendices (balance sheets, income statements and allocation of income) for the 2016, 2017 and 2018 financial years of the companies in the AURELIUS group that have contracted with OFFICE DEPOT France, including Getronics, GTM, ECIT, OD International BV, OFFICE DEPOT Service Center SRL, and not accounting balances such as those provided in the interval of the two hearings,
Communication of the cost/performance comparison between the former IBM provider and GETRONICS.

7

With respect to documented responses to the above questions:
- *With which other companies of the AURELIUS group has OFFICE DEPOT France concluded commercial service contracts?*
A response was provided on June 9, 2019 by management of the defendant company, the analysis of which determined the CCE to extend during the following June 11 hearing its request for disclosure to the expert of the auditors' reports for the financial years 2016, 2017 and 2018, in addition to ECIT and GTM referred to in the summons, for the companies Getronics, OD International BV, OFFICE DEPOT Service Center SRL.

- *Has OFFICE DEPOT France won any contracts with companies in the AURELIUS group?*
The CCE considers, however, that the response provided by the company is "*erroneous*" and "*misleading*". AURELIUS did not own any companies in FRANCE with the exception of OFFICE DEPOT FRANCE, except for participations as indicated by the defendant company at the hearing.

- *What was the company with which AURELIUS was in talks for a possible sale of the French OFFICE DEPOT companies*?
No answer provided

- *Communication of the letter from OD INC to OFFICE DEPOT following the sale of its stake.*
No response provided.

For a fuller statement of the facts and contentions of the parties, reference should be made to the writ initiating the procedure and to the parties' written pleadings delivered, endorsed and supported at the hearing on June 11, 2019.

The Court placed the case for deliberation and the decision was set for June 25, 2019.

<u>**REASONS**</u>

**On the admissibility of the voluntary intervention**

According to articles 325 and 330 of the code of civil procedure, the intervention is admissible only if it is linked to the claims of the parties by a sufficient link, the accessory intervention coming in support of the claims of a party, whose author has an interest, for the preservation of his rights, to support this party.

In the present case, the interest of the company ALTER to act and the sufficient link between its demands and the original claims are characterized by the very identity of the intervening party, an accounting firm mandated on March 14, 2019 by the CCE of the company OFFICE DEPOT FRANCE, to assist it in drawing up the report provided for in Article L. 2323-50 of the Labor Code, under the right to economic warning implemented on February 6, 2019.

It is therefore appropriate to accept the ancillary intervention of the company ALTER, whose interest in supporting the main claim presented by the CCE of the company OFFICE DEPOT FRANCE is demonstrated.

**On the documents produced in support of the conclusions of SAS OFFICE DEPOT FRANCE and the respect of the principle of contradiction**

According to articles 15 and 16 of the Code of Civil Procedure, in application of the guiding principles of civil proceedings common to all jurisdictions, the parties must inform each other in good time of the factual grounds on which they base their claims, the evidence they produce and the legal grounds they invoke, so that each party is in a position to organize its defense. The judge must, in all circumstances, ensure that the principle of contradiction is observed and observe it himself.

Article 753 of the aforementioned Code provides that the pleadings must expressly state the claims of the parties as well as the factual and legal grounds on which each of these claims is based. A list of the documents supporting these claims is attached to the pleadings.

In this case, the CCE requests, on the one hand, to set aside the writings of SAS OFFICE DEPOT FRANCE which were communicated to them on the day of the hearing, June 11, 2019 at 11:25 a.m., and, on the other hand, the production of a clear and detailed docket.

ALTER states that it is appropriate to set aside only the aforementioned pleadings filed by the defendant company at 11:25 a.m. on June 11, 2019, without requiring this request to extend to the exhibits filed between the May 28 and June 11, 2019 summary hearings.

If the defendant company was able to present orally, on the day of the hearing, its arguments and claims, and thus make them known to the CCE of the company OFFICE DEPOT FRANCE and to the firm ALTER, which were able to reply during the hearing debate the writings of SAS OFFICE DEPOT FRANCE entitled "conclusions in response" and communicated on June 11, 2019 by SAS OFFICE DEPOT FRANCE, which the latter's lawyer did not contest, must be set aside as late in order to respect the principle of contradiction, in application of the aforementioned article 16.

The company ALTER and the CCE do not oppose the production and the examination of the documents recently communicated by the defendant, requesting however the communication of a detailed list or, failing that, to reject the documents which would not correspond to the list, it follows that this sanction of failure to respect the principle of contradiction does not have to extend to the documents communicated to the parties by SAS OFFICE DEPOT FRANCE between the summary proceedings hearing of May 28 and June 11, 2019, in particular on June 9, 2019, nor to the schedule accompanying them. With regard to the request for the communication of a more detailed schedule, since the court of first instance did not intend to authorize the production of notes for the record, and insofar as the parties do not object to the production of exhibits no. 13 to 20, not referred to in the said schedule, their requests being specifically for the communication to the chartered accountant of documents necessary for the accomplishment of his mission, the documents communicated by SAS OFFICE DEPOT FRANCE on June 9, 2019 having been able to be debated in adversarial proceedings during the hearing, under our office, there is no need to enjoin the defendant company to produce a more detailed schedule.

**On the texts applicable to the right of economic alert by a comité d'entreprise**

It should be noted that Ordinance No. 2017-1386 of September 22, 2017 on the new organization of social and economic dialogue in the company and promoting the exercise and enhancement of trade union responsibilities amended the provisions of the Labor Code relating to the right to economic alert, the operation of a comité d'entreprise [works council] and their general mission to inform and consult the comité d'entreprise [works council]

Under the terms of article 9 of the aforementioned ordinance, the CSE (social and economic committee) is set up at the end of the mandate of the employee delegates or the elected members of the comité d'entreprise [works council], of the single employee delegation, of the combined body set up by agreement of the health, safety and working conditions committee, at the time of the renewal of one of these institutions, and at the latest on December 31, 2019. Thus, the staff delegates, the works council, the health, safety and working conditions committee, the single staff delegation and the combined body remain subject to the provisions that were specific to them before the ordinance came into force, until they disappear.

Since it appears, in light of the debates, that the social and economic committee (CSE) has not yet been set up within SAS OFFICE DEPOT, none of the hypotheses envisaged by the aforementioned article 9 likely to give an early end to the mandate of the CCE having obviously occurred within this company, since it is the latter which triggered the economic alert procedure, it is appropriate to refer to the former provisions of the Labor Code, before their abrogation on January 1, 2018.

9

**On the existence of a manifestly unlawful disturbance and the intervention of the summary judgment judge**

Pursuant to the provisions of article 809, paragraph 1, of the Code of Civil Procedure, the summary judgment judge may always, even in the presence of a serious dispute, prescribe in summary proceedings the protective or restoration measures that are necessary, either to prevent imminent damage or to put an end to a manifestly illicit disturbance.

A manifestly unlawful disturbance is any disturbance resulting from a fact that, directly or indirectly, constitutes a clear violation of the rule of law. The existence of a serious dispute does not prevent the summary judgment judge from taking the measures provided for in the aforementioned article.

According to the article L.2323-50 of the Labor Code, when the Works Council is aware of facts that can affect in a worrying way the economic situation of the company, it can ask the employer to give explanations. If the Works Council could not get a sufficient answer from the employer or if the employer confirms the worrying character of the situation, it draws up a report. According to the article L.2323-51 of the above-mentioned code, the Works Council or the Economic Commission can be assisted, once per accounting year, by the Chartered Accountant provided for in the article L.2323-35.

The defendant company maintains that the definition of the object of the mission detailed in the mission letter of the expert did not in any way refer to the conditions of the sale of the OFFICE DEPOT group in Europe to AURELIUS, this having been carried out more than two years before the implementation of the economic warning right. It argues that SAS OFFICE DEPOT FRANCE did not refuse to communicate the documents requested by ALTER, proceeding on the contrary to send numerous documents. It also states that certain documents are not yet available, in particular the 2019 and 2020 OFFICE DEPOT FRANCE budgets and the audit report carried out in 2019 by Eight Advisory on OFFICE DEPOT FRANCE, which will only be available in July 2019, and undertakes to provide them after this deadline.
It also asserts that the communication of all the documents annexed to the transfer contract of OFFICE DEPOT Inc. to AURELIUS of OFFICE DEPOT EUROPE would not be absolutely necessary for the mission of the expert as defined by the resolutions of the CCE on the right to alert and the mission letter of the ALTER firm of March 15, 2019 invoking, moreover, the confidential nature of certain documents or information requested. The defendant company added that only the auditors' reports with their appendices for the 2016, 2017 and 2018 financial years of the companies of the AURELIUS group, GTM and ECIT, had been initially requested, and not all the companies of the AURELIUS group having contracted with OFFICE DEPOT FRANCE. SAS OFFICE DEPOT FRANCE requested that the summary judgment judge proceed with the control of the necessity of the requested documents with regard to the mission of the expert.

First of all, it should be reminded that the assessment of the worrying nature of the facts which motivate the alert procedure is the sole competence of the Works Council, which is also the only one competent to define the mission of the Chartered Accountant, which extends to the facts likely to confirm the worrying economic situation of the company, which are the necessary continuation of those which motivated the exercise of the alert right. The role of the Chartered Accountant appointed in the context of a warning procedure covers all economic, financial or social elements necessary to understand the accounts and to assess the economic situation of the company.

It will also be recalled that, except for a request which would obviously exceed the scope of the entrusted mission, it is up to the expert appointed on the basis of the aforementioned articles L.2323-35 and L.2323-51 to assess the elements which he considers necessary for its accomplishment and that to carry out any verification or control entering into the exercise of his missions, the Chartered Accountant has access to the same documents as the Statutory Auditor in accordance with the provisions of article L.2325-37 of the Labor Code.

If the employer can contest the nature of the documents requested by the expert during his mission, and in particular contest the necessity of these documents

10

with regard to the mission entrusted by the works council as asserted by SAS OFFICE DEPOT FRANCE, it remains that only the expert is in a position to control the concrete usefulness of these documents by carrying out his mission, except in the case of characterized abuse of right.

The mission of the expert is not exclusively accounting and must allow the Works Council to know the economic, social and financial situation of the company in the whole group to which it belongs and in relation to the other companies of a group with which it must be able to compare. As a result, when the company is part of a group, the Chartered Accountant must have access to the information held by other companies of the group, even if they are located abroad. Moreover, professional secrecy cannot be invoked against the chartered accountant when it is not invoked against the statutory auditors.

In addition, the role of the Chartered Accountant appointed in the context of a warning procedure concerns all economic, financial or social elements necessary to understand the accounts and to assess the economic situation of the company. As the expert is the sole judge of the elements useful to the exercise of his mission, the employer is therefore bound to satisfy his requests provided that they do not exceed the legal object of his mission and that this mission does not exceed the object defined by the labor code and the mandate that was entrusted to him. However, it cannot demand the production of documents that do not exist and whose preparation is not mandatory for the company.

In this case, it appears from the documents submitted to the debates that the Works Council of OFFICE DEPOT FRANCE decided, on February 6, 2019, to initiate the economic alert procedure due to its "*strong concern about the future of the company*" and the conditions surrounding "*the sale of the real estate of [the latter] and [the] financial flows between the different structures of the group*", and because of the "*fears of the CCE on the future of the company and jobs*" that the answers provided by the management of the company on January 30, 2019, "f*ar from answering with sufficient precision to the questions raised by the CCE*", did not manage "*to appease*".

On March 14, the CCE appointed the accounting firm ALTER to assist it in this procedure, which informed management of OFFICE DEPOT FRANCE of the framework and content of its mission, by letter dated March 15, 2019, aimed at establishing "*a report to understand and assess the economic, financial, social and strategic situation of the company as well as its prospects*", specifying to deal in particular with "*elements of concern concerning the real estate assets with an impact on the economic future of the OD FRANCE structure*" as well as "*the financial flows between the company* and the companies of the OD group".

By letter of the same day, the company ALTER asked the company OFFICE DEPOT FRANCE for a list of information and documents of which only a part was given to it by the employer and a set of questions of which part remained unanswered.

Requests for additional information were sent on March 26, 2019, relating in particular to the "*cash position as of the most recent date and monthly cash forecasts until the end of 2019 and the 2019 and 2020 budgets*", on April 4, 2019 concerning in particular "*the fees of 1,7 million invoiced to OD Participations in 2018 by the firm Alvarez et Marsal*", on April 19, 2019 requesting in particular "*the statutory auditors' reports with the appendices (income statements, balance sheet, allocation of net income in particular) for the financial years 2016, 2017 and 2018 of the following companies of the AURELlUS group: GTM and EClT*", on April 26, 2019 requesting in particular" *the transfer pricing agreements between OD France and related companies (both the agreements in force before the takeover by AURELlUS and those effective since*"

The chartered accountants of ALTER drew up a progress report on May 2, 2019, from which it emerges that their mission cannot be completed in view of the only information "*very incomplete in relation to their requests*" - "*the current cash flow situation not having been transmitted to them*" at that date - spontaneously provided by the management of OFFICE DEPOT FRANCE.

Furthermore, SAS OFFICE DEPOT FRANCE did not contest the legality of the recourse by the CCE to the alert procedure and of the appointment by the latter of a chartered accountant to assist it in the framework of this procedure.

The present dispute concerns the communication of documents requested by the ALTER firm during its successive exchanges with the management of the OFFICE DEPOT FRANCE company, then as part of its voluntary intervention accessory to the main request of the CCE before the judge of summary proceedings, for the execution of the mission which was entrusted to it as assistance to the CCE of the OFFICE DEPOT FRANCE company, at the time of the implementation of the economic alert procedure.

In this perspective, it is up to the works council of the company OFFICE DEPOT FRANCE and to the appointed expert, the firm ALTER, in order to characterize the existence of a manifestly illicit disturbance caused to the activities of the central works council by a non-satisfaction of the requests of the expert, to prove, document by document, the existence of the documents of which it requests the communication or of the legal obligation in which the employer would find himself to have to establish them.

**On the communication of documents to the accounting firm appointed by the CCE under penalty of fines**

On the day of the judge's decision, a comparison of the written submissions, the summons, the summary of the hearing and the documents communicated between the hearings of May 28 and June 11, shows that a number of documents have been provided and are not in dispute, while others remain in dispute, as follows
- all documents attached to the contract of transfer from OFFICEDEPOT INC to AURELIUS of OFFICE DEPOT EUROPE,
- Detailed list of the main investments in the 3-year forecast recovery plan, carried out over the years 2016, 2017 and 2018 and the financing table as of January 1, 2017, i.e. the entire forecast at the time of purchase, not just the "*realized*",
- the statutory auditors' reports with their appendices, which are mandatory in European countries (income statements, balance sheet, allocation of net income in particular), for the 2016, 2017 and 2018 financial years of the holding companies of OFFICE DEPOT FRANCE (Heteyo holding BV, Office Depot France Holding two BV, Office Depot France Holding BV, ODE Holding BV, OD Int UK Ltd, Office Depot Europe Holding Gmbh and Aurelius Equity Opportunity SE & Co),
- cash flow forecasts until the end of 2019, in the form of a document with an official stamp from the management of OFFICE DEPOT FRANCE, i.e. a forecast table of the 2019 cash flow,
- OFFICE DEPOT France 2019 and 2020 budgets,
- the audit report conducted in 2019 by Eight Advisory on OFFICE DEPOT France,
- the audit reports of the firm Alvarez and Marsal, and not the simple "*draft*" of February 2017 transmitted for the hearing of June 11, 2019 which would be "*a simple project*" according to the CCE,
- the auditors' reports with the appendices (balance sheets, income statements and allocation of income) for the 2016, 2017 and 2018 financial years of the companies in the AURELIUS group that have contracted with OFFICE DEPOT France, including Getronics, GTM, ECIT, OD International BV, OFFICE DEPOT Service Center SRL, and not accounting balances such as those provided in the interim of the two hearings,
- Communication of the cost/performance comparison between the former IBM provider and GETRONICS.

SAS OFFICE DEPOT FRANCE asserts, however, that certain requested documents do not exist or are not yet available, in particular the audit reports of the firm Alvarez et Marsal as well as the 2019 and 2020 OFFICE DEPOT FRANCE budgets and the 2019 audit report by Eight Advisory on OFFICE DEPOT FRANCE, which should only be available in July 2019. In the state of the last writings of the CCE and the ALTER firm before the judge of the summary proceedings and of their claims presented orally at the hearing, they limit themselves to asserting the existence of these last documents requested from SAS OFFICE DEPOT FRANCE, wondering about their unavailability with regard to the size of the company or the price of the services invoiced by the Alvarez and Marsal firm.

*On the OFFICE DEPOT FRANCE 2019 and 2020 budgets and the audit report realized in 20/9 by Eight Advisory on OFFICE DEPOT FRANCE*

If the CCE OFFICE DEPOT FRANCE and the company ALTER express their surprise regarding the unavailability of the budgets OFFICE DEPOT FRANCE 2019 and 2020, requested by the expert in his request of March 26, 2019, they do not report the proof of their existence while SAS OFFICE DEPOT FRANCE indicates that they should be available in the course of July 2019, as well as the audit report conducted in 2019 by the firm Eight Advisory. With regard to the latter report, also requested by the expert on March 26, 2019, the CCE noted that "*Mr. De Feydeau indicated in his last communication to employees on May 24, 2019: "we have had meetings in high places at the Ministry of Finance to whom we have also submitted our plan in a framework of transparency and support*", from which it could be deduced that it would be the "*transformation plan built and carried out by Eight Advisory*".

Since they do not provide the evidence required in summary proceedings - beyond this single conjecture which fails to convince - of the existence, or more precisely of the availability of this set of documents, which the defendant assures that it will receive very soon, the CCE and the ALTER firm fail to characterize the existence of a manifestly unlawful disturbance caused by this to the activities of the Central Works Council. It will therefore be declared that there is no need to order the communication of the OFFICE DEPOT FRANCE 2019 and 2020 budgets and the audit report carried out in 2019 by Eight Advisory on OFFICE DEPOT FRANCE.

### On the audit reports of the firm Alvarez and Marsal

The defendant company has submitted a copy of the engagement with Alvarez and Marsal, which provides in its article 4 entitled "*no audit, duty to update*": "*it is understood that A&M is not being requested to perform an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the American Institute of Certified Public Accountants, the Securities and Exchange Commission or other state, national or international professional or regulatory body*", from which it can be inferred, by a translation of the obvious, that this contractual relationship in no way entails the obligation to prepare an audit report.

If the plaintiffs fail to provide proof of the existence of these audit reports or of the legal obligation for the parties to the above-mentioned commitment to draw up the documents thus requested, the demonstration of the manifestly unlawful nature of the disturbance that they would have suffered as a result is not provided.

Under these conditions, the CCE of SAS OFFICE DEPOT FRANCE and SARL ALTER will be dismissed from their requests for communication under penalty to the chartered accountant - beyond the February 2017 "*draft*" transmitted for the June 11, 2019 hearing, which would be "*a simple draft*" according to the CCE - of the audit reports of the firm Alvarez et Marsal. There is no need for summary proceedings on this head of claim.

### On the statutory auditors' reports with the appendices (balance sheets, income statements and allocation of income) for the financial years 2016, 2017 and 2018 of the companies of the AURELIUS group that have contracted with OFFICE DEPOT France including Getronics, GTM,ECIT, OD International BV, OFFICE DEPOT Service Center SRL

The CCE and the ALTER firm invoke a manifestly unlawful disturbance to support their request for communication to the expert of the auditors' reports with their appendices (balance sheets, income statements and allocation of income) for the 2016, 2017 and 2018 financial years of the companies in the AURELIUS group that have contracted with OFFICE DEPOT France, including Getronics, GTM, ECIT, OD International BV, OFFICE DEPOT Service Center SRL - and not just the accounting balances such as those provided in the interval between the two hearings before the summary judgment judge.

13

However, OFFICE DEPOT FRANCE argues that it cannot be ordered in summary proceedings to disclose, under penalty, the reports of the auditors of all the companies of the AURELIUS group that have contracted with OFFICE DEPOT France, while the expert, in the context of the various requests for disclosure of documents, has only requested these documents for the companies GTM and ECIT

It appears from the request for additional information n°3 that ALTER requested from OFFICE DEPOT FRANCE the communication of "*the auditors' reports with the appendices (income statement, balance sheet, allocation of net income in particular) for the financial years 2016, 2017 and 2018 of the following companies of the AURELIUS group: a. GTM b. ECIT*" and not the disclosure of said reports for each of the AURELIUS group companies having contracted with OFFICE DEPOT France, extended at the hearing of June 11 to Getronics, OD International BV, OFFICE DEPOT Service Center SRL.

It is therefore not possible to establish any failure by SAS OFFICE DEPOT FRANCE to communicate the auditors' reports, with their annexes, concerning the companies Getronics, OFFICE DEPOT SERVICE CENTER SRL and OD INTERNATIONAL BV, or any other company of the AURELIUS group having contracted with OFFICE DEPOT France, which could characterize a manifestly unlawful disturbance on which the exercise of the court of summary jurisdiction's power to issue an injunction could be based. Such an opposition is not reported at the time of the exercise by the CCE of its right of economic alert, in the absence of the ALTER firm having requested the production of these specific documents before the introduction of the proceedings.

Under these conditions, it will be declared that there are no grounds for summary proceedings on the request of the central works council of SAS OFFICE DEPOT FRANCE and of the company ALTER for the communication, under penalty, to the certified public accountant of the auditors' reports with the appendices (balance sheets, income statements and allocation of income) for the financial years 2016, 2017 and 2018 of the companies Getronics, OD International BV, OFFICE DEPOT Service Center SRL, or any other company of the AURELIUS group that has entered into a contractual agreement with OFFICE DEPOT France.

### On the communication of the cost/performance comparison between the former provider IBM and GETRONICS.

SAS OFFICE DEPOT FRANCE also presents, in response to the request for a cost/performance comparison between the former IBM service provider and that of Getronics requested by the chartered accountant in its "*request for additional information n°3*" of April 19, 2019 - to have prepared, communicated to the parties and submitted to the debates such a comparison in the light of the information available to it, even though it was not legally required to do so. It states that it is unable to produce a more detailed document.

As the plaintiff did not demonstrate that a cost/service comparison between the former service provider IBM and GETRONICS had to be legally established by SAS OFFICE DEPOT FRANCE, while the latter asserted that there was no other document more detailed than the one already communicated, no manifestly unlawful disturbance to the activities of the central works council could be retained by the absence of communication of such a document to the expert.

It will be declared that there are no grounds for summary proceedings on the request of the CCE of SAS OFFICE DEPOT FRANCE and SARL ALTER for the communication, under penalty, to the chartered accountant of a cost/performance comparison between the former IBM service provider and GETRONICS.

### On the other requests for disclosure under penalty payment

Counsel for OFFICE DEPOT FRANCE explained at the hearing that, as these are documents held by third parties, it is up to the court to determine not only the necessity of the documents requested with regard to the mission entrusted to it, but also to control the appropriateness of such a communication and to verify that the company in question is indeed in a position to produce them, all conditions that would be lacking in this case.

However, the Chartered Accountant must help the CCE to appreciate the situation of the company, if necessary by extending his investigations to the group in which it is inserted and issue an opinion on the origin and the extent of its difficulties, his mission extending to the facts likely to confirm the worrying economic situation of the company which are the necessary continuation of those which motivated the exercise of the right of alert.

In this case, it appears from the documents submitted to the debates, in particular the organization chart provided by the company's management to the CCE and taken from the "*2017 annual report of AURELIUS*" (resolution of the CCE of February 6, 2019) that the parent company, sole shareholder and 100% financial holding company of OFFICE DEPOT FRANCE is SAS OD PARTICIPATION FRANCE, which is itself owned by HETEYO Holding BV, located in the Netherlands. 5 European companies complete the legal and capital structure of the OFFICE DEPOT group: OFFICE DEPOT FRANCE HOLDING TWO BV, OFFICE DEPOT FRANCE HOLDING BV, ODE HOLDING BV, OFFICE DEPOT EUROPE HOLDING GMBH and finally the AURELIUS group, which acquired the "*European group*" from the American shareholder OFFICE DEPOT INC in January 2017 (according to management response to the CCE in March 2019). The first accounting firm appointed by the CCE mentioned in its mission letter of February 18, 2019, "*a cascade of holding companies whose usefulness and relevance are not clear ( ... ) the stated strategy being to treat France as an autonomous entity*", noting that "*understanding these links is particularly important*". The ALTER firm thus argues that "*the European nature of the OFFICE DEPOT group and its integration into the AURELIUS companies*" must necessarily lead it to extend its "*investigations (...) within the framework of the alert procedure (...) to the companies that the AURELIUS holding companies control*", which are "*economically linked to each other*".

SAS OFFICE DEPOT FRANCE, obliged to satisfy the requests of the expert in accordance with the combined provisions of articles L.2323-35, L.2323-51 and L.2325-37 of the Labor Code, cannot validly claim that the documents relating to the aforementioned companies and holding companies, the existence of which it acknowledges, would be useless or inopportune in view of the drawing up of the report provided for by article L.2323-50 of the Labor Code. As previously stated, the chartered accountant appointed to assist the CCE remains the only person competent to determine the documents useful for his mission, which may be extended to the persons or entities controlling the company and to the group in which the company is included. As a result, when the company is part of a group, the Chartered Accountant must be able to access information held by other companies in the group, even if they are located abroad.

Since the requests made by the CCE and the Chartered Accountant do not exceed the legal scope of his mission and this mission does not exceed the scope defined by the Labor Code and the mandate given to him, it being specified that the requests for communication of the auditors' reports for the financial years 2016, 2017 and 2018, i.e. for the three previous years, do not appear to be out of line, the defendant company cannot judge the usefulness of the disputed documents which the CCE of OFFICE DEPOT FRANCE is requesting to be sent to ALTER.

Consequently, SAS OFFICE DEPOT FRANCE's defense, which is limited to stating that the documents relating to the other entities of the group are not in its possession and that it failed to obtain them despite email requests, cannot be accepted as relevant, in that it does not justify, obviously, a real material impossibility.

In light of the engagement letter sent to SAS OFFICE DEPOT FRANCE on March 15, 2019 and its requests for additional information during which ALTER reiterated its requests for disclosure of documents (on March 26, 2019, April 4, 2019, April 19, 2019 and May 14, 2019), it appears that SAS OFFICE DEPOT FRANCE - beyond the requests for disclosure rejected above - has not satisfied ALTER's requests for disclosure:
- of the appendices to the transfer contract between OD INC and AURELIUS of Office DEPOT Europe, a request reformulated at the hearing by the firm ALTER, for greater precision, in

15

all the documents attached to the transfer contract between OFFICE DEPOT INC. and AURELIUS, details of the main investments in the 3-year forecast recovery plan, carried out over the years 2016, 2017 and 2018 and the financing table as of January 1, 2017, i.e. the entire forecast at the time of purchase, not just the "*realized*",

- the statutory auditors' reports with their annexes, which are mandatory in European countries (income statements, balance sheet, allocation of net income in particular), for the 2016, 2017 and 2018 financial years of the holding companies of OFFICE DEPOT FRANCE (Heteyo holding BV, Office Depot France Holding two BV, Office Depot France Holding BV, ODE Holding BV, OD Int UK Ltd, Office Depot Europe Holding Gmbh and Aurelius Equity Opportunity SE & Co),

- cash flow forecasts until the end of 2019, in the form of an official management document of OFFICE DEPOT FRANCE, i.e. a 2019 cash flow forecast table,

- the statutory auditors' reports with the notes (income statements, balance sheet, allocation of net income in particular) for the 2016, 2017 and 2018 financial years of the following AURELIUS Group companies: GTM and ECIT.

Between March 15, 2019 and May 20, 2019, the date on which the summons was served on the defendant company, SAS OFFICE DEPOT FRANCE communicated several documents to the debates. Nevertheless, it did not provide the above-mentioned elements, while ALTER renewed its request on several occasions.

Consequently, the lack of satisfaction of the requests of the ALTER firm at the time of the exercise of the right of economic alert implemented on February 6, 2019 characterizes a manifestly illicit disturbance caused to the activities of the CCE which it is appropriate to put an end to by ordering SAS OFFICE DEPOT FRANCE to communicate, under provisional penalty in the conditions fixed in the operative part of the present order, all the aforementioned documents to the accountants of the ALTER firm.

There is no reason to reserve the liquidation of the penalty payment.

**On the questions formulated by the CCE and the ALTER firm**

When exercising its right to alert, the CCE may ask the employer to provide explanations, which must be understood in the broad sense of the term, i.e. all elements of an economic, financial or social nature necessary for the understanding of the accounts and the assessment of the company's economic situation.

It should be remembered that under the terms of article 809 of the Code of Civil Procedure, the measures intended to put an end to the manifestly unlawful disturbance consist of conservatory measures or measures to restore the site.

By the terms of its writ of summons, the CCE of OFFICE DEPOT FRANCE asks the interim relief judge to order OFFICE DEPOT FRANCE, under a fine, to communicate to the accounting firm ALTER the answers (documents) to the following questions, initially asked by the accountant in his requests for updated information contained in his report of May 2, 2019:

> *With which other companies of the AURELIUS group has OFFICE DEPOT France concluded commercial service contracts?*

In its letter of June 10, 2019, the CCE of OFFICE DEPOT FRANCE emphasizes that management of OFFICE DEPOT FRANCE would have "*finally admitted that the only entities in the Aurelius scope with which OD France has concluded commercial service contracts are Getronics, GTM (OD brand), ECIT (IT), Office Depot Service Center SRL and OD International BV.*"

It can be deduced from this that a response was thus provided by management of the defendant company, the analysis of which determined the CCE to extend its request for communication of the reports of the

16

auditors for the years 2016, 2017 and 2018, in addition to the companies ECIT and GTM referred to in the summons, but also the companies Getronics, OD International BV, OFFICE DEPOT Service Center SRL, requests that were previously answered. This request for a response therefore appears to be moot and it will be declared that there are no grounds for summary proceedings on this head of the request.

*Has OFFICE DEPOT France won any contracts with companies of the AURELIUS group*

In its letter dated June 10, 2019, the CCE of OFFICE DEPOT FRANCE indicated that SAS OFFICE DEPOT FRANCE had "*maintained the fallacious answer that AURELIUS does not own any companies in France except OFFICE DEPOT FRANCE*" whereas it would appear in the 2018 AURELIUS report that other subsidiaries in France are owned by AURELIUS.

If the CCE of the company OFFICE DEPOT FRANCE invokes the character "*erroneous*" or "*misleading*" of he answers provided by the defendant company, the fact remains that such an allegation cannot be used to characterize the existence of a manifestly unlawful disturbance that the summary judgment judge could put an end to, since it does not seem to be within the judge's remit, as a judge of the obvious and the indisputable, to assess whether the answers given by a litigant are misleading, loyal, fallacious or erroneous. Furthermore, the court of first instance could not enjoin SAS OFFICE DEPOT FRANCE to produce documents likely to provide answers to the questions asked by the CCE without indicating to it - on pain of going beyond its field of competence - the precise documents requested.

There is no need for summary proceedings on this head of claim.

*What is the company with which AURELIUS was in talks for a possible sale of the French OFFICE DEPOT companies*

In its May 2, 2019 progress report, ALTER noted that at the meeting on "*March 22, 2019 in Senlis, Mr. De Feydeau stated that Aurelius had attempted to sell OD's activities in France last year to a potentially interested third party*" and requested that the name of said company be brought to his attention. SAS OFFICE DEPOT FRANCE argued in reply that these talks remained at an embryonic stage, and that, although there had been discussions on the possible evolution of the shareholding structure of OFFICE DEPOT FRANCE, these had not succeeded.

If the mission of the Chartered Accountant, at the time of the right of economic alert, consists in assessing the economic, financial, social and strategic situation of the company, the talks which are mentioned having not succeeded, the refusal of SAS OFFICE DEPOT FRANCE to communicate the identity of the company with which AURELIUS was negotiating could not constitute an obvious violation of the rule of law and characterize a manifestly unlawful disturbance, in the absence of invocation of a document whose establishment would be mandatory for the company following these talks.

The request for disclosure on this count must therefore be rejected.

*Communication of the letter from OFFICE DEPOT INC to OFFICE DEPOT following the sale of its stake*

It should be noted that SAS OFFICE DEPOT FRANCE communicated on May 6, 2019 a document entitled "Comfort letter 2014 OD inc" dated November 17, 2014. Without further information as to the document requested by CCE OFFICE DEPOT FRANCE, it should be concluded that this element has already been provided and that there are no grounds for summary judgment on this head of claim.

17

Finally, it will be declared that there is no need for summary proceedings on all the requests made by the CCE OFFICE DEPOT FRANCE to enjoin SAS OFFICE DEPOT FRANCE to answer the above-mentioned questions.

**On the remaining requests**

Equity requires that SAS OFFICE DEPOT FRANCE be ordered to pay to the CCE of OFFICE DEPOT FRANCE the sum of 2,000 euro and to ALTER the sum of 1,500 euro under Article 700 of the Code of Civil Procedure.

SAS OFFICE DEPOT FRANCE shall be ordered to pay all costs of the proceedings, including the costs of service and enforcement.

<u>**NOW THEREFORE**</u>

**We, Arnaud BORZEIX, president of the *tribunal de grande instance* of SENLIS, ruling in summary proceedings, by contradictory order, made available at the clerk's office and in first resort,**

**Declare** the voluntary intervention of the company ALTER admissible;

**Let us set aside** the documents entitled "conclusions in response" communicated on June 11, 2019 by SAS OFFICE DEPOT FRANCE;

**Let us say** that there is no reason to enjoin SAS OFFICE DEPOT FRANCE to produce a more detailed disclosure statement;

**Let us say** that the absence of communication by SAS OFFICE DEPOT FRANCE of several documents requested by the chartered accountant of the company ALTER within the framework of the execution of its mission of assistance of the CCE of the company OFFICE DEPOT FRANCE within the framework of the right of economic alert constitutes a manifestly illicit disorder;

**Order** SAS OFFICE DEPOT FRANCE, under provisional penalty of 1000 euro per day of delay and per missing document, to communicate to the accounting firm ALTER the following documents
- all documents attached to the transfer contract between OFFICE DEPOT INC and AURELIUS,
- details of the main investments in the 3-year forecast turnaround plan, carried out over the years 2016, 2017 and 2018 and the financing table as of January 1, 2017, i.e. the entire forecast at the time of purchase,
- reports of the statutory auditors with their appendices (income statements, balance sheet, allocation of net income in particular), for the 2016, 2017 and 2018 financial years of the holding companies of OFFICE DEPOT FRANCE (Heteyo holding BV, Office Depot France Holding two BV, Office Depot France Holding BV, ODE Holding BV, OD Int UK Ltd, Office Depot Europe Holding Gmbh and Aurelius Equity Opportunity SE & Co),
- cash flow forecasts until the end of 2019, in the form of an official management document of OFFICE DEPOT FRANCE, i.e. a forecast of the 2019 cash flow,
- statutory auditors' reports with appendices (income statements, balance sheet, allocation of net income in particular) for the 2016, 2017 and 2018 financial years of the following AURELIUS Group companies: GTM and ECIT;

**Let it be said** that this penalty shall run from a **period of fifteen (15) days following the service of the present order**, and for a period of three months;

**Let us say** that it will be up to SAS OFFICE DEPOT FRANCE to justify the execution of its obligation for the liquidation of the provisional penalty;

18

**Let us say** that there is no reason to reserve the liquidation of the penalty;

**Declare** that there are no grounds for summary proceedings on the other heads of the requests for communication of documents made by the CCE of the company OFFICE DEPOT FRANCE and the company ALTER;

**Declare** that there are no grounds for an interim injunction on the request made by the CCE of OFFICE DEPOT FRANCE to enjoin SAS OFFICE DEPOT FRANCE to answer several questions;

**Condemn** SAS OFFICE DEPOT FRANCE to pay the CCE of OFFICE DEPOT FRANCE the sum of 2,000 euro in application of the provisions of article 700 of the Code of Civil Procedure;

**Condemn** SAS OFFICE DEPOT FRANCE to pay the company ALTER the sum of 1500 euro in application of the provisions of article 700 of the code of civil procedure;

**Let us reject** any further or contrary requests;

**Condemn** SAS OFFICE DEPOT FRANCE to pay all costs, including the costs of service and enforcement;

**Let it be noted** that the provisional execution of the present decision is automatic.

THE CLERK                                                          THE PRESIDENT
[Signature]                                                        [Signature]

Consequently, the French Republic requests and orders all Bailiffs to enforce the present judgment. To the Public Prosecutors and the Public Prosecutors of the Republic of France at the District Courts to enforce it. To all Commanders and Officers of the Public Force to lend a hand when legally required. For ORIGINAL certified true, delivered by Us, the chief clerk of the Tribunal de Grande Instance of Senlis, on 26/06/2019.

The Chief Clerk
[stamp and signature]

19

Minute n° 19/00135

**Audience du 11/06/2019**
**Délibéré du 25/06/2019**

**N° RG 19/00136 - N° Portalis DBZW-W-B7D-C7I5**

*Ordonnance de référé*

AFFAIRE:

**Comité central d'entreprise OFFICE DEPOT FRANCE C/ S.A.S. OFFICE DEPOT FRANCE Société ALTER**

**PRÉSIDENT :**
Arnaud BORZEIX

**Greffier :**
Aurore COINON

Grosse le 25/06/19
à Me PARES
Grosse le 25/06/19
à Me PRADAL
Expédition le 25/06/19
à Me PARES
Expédition le 25/06/19
à Me PRADAL
Expédition le 25/06/19
à Me TERNISIEN

Copie dossier

## RÉPUBLIQUE FRANÇAISE

### AU NOM DU PEUPLE FRANÇAIS

### TRIBUNAL DE GRANDE INSTANCE DE SENLIS

### ORDONNANCE DE RÉFÉRÉ

*DÉLIBÉRÉ DU VINGT CINQ JUIN DEUX MIL DIX NEUF*
Plaidoiries du : onze Juin deux mil dix neuf

ENTRE :

**DEMANDERESSE**

**Comité central d'entreprise de la société OFFICE DEPOT FRANCE,**
dont le siège social est sis 126, Rue du Poteau - 60300 SENLIS

*représentée par Me Céline PARES, avocat au barreau de PARIS,*

ET

**DÉFENDERESSE**

**S.A.S. OFFICE DEPOT FRANCE,**
dont le siège social est sis 126, Rue du Poteau - 60300 SENLIS

*représentée par Me Laetitia TERNISIEN, avocat au barreau de PARIS, de l'AARPI JEANTET,*

**PARTIE EN INTERVENTION VOLONTAIRE :**

**Société ALTER,**
société d'expertise comptable à responsabilité limitée, dont le siège social est sis 67 rue Victor Hugo - 71000 MACON,

*représentée par Me Philippe PRADAL, avocat au barreau de PARIS, du cabinet ADEAL,*

1

**EXPOSE DU LITIGE**

La société OFFICE DEPOT FRANCE dont le siège social est situé à SENLIS (60), 126 avenue du Poteau, est une société spécialisée dans la distribution de fournitures et de mobilier de bureau.

Lors de sa réunion du 22 janvier 2019, le comité central d'entreprise, ci-après dénommé CCE, de la société OFFICE DEPOT a soumis à cette dernière une demande d'explications, en application de l'article L. 2323-50, et sollicité les réponses aux questions posées avant le 6 février 2019, faisant valoir sa préoccupation *« quant à la situation de l'entreprise et la gestion de l'entreprise par ses dirigeants »* précisant que *« les informations délivrées au compte-gouttes quant à la cession des biens immobiliers de l'entreprise et des flux financiers entre les différentes structures du groupe constituent des éléments pouvant affecter de manière préoccupante la situation économique de l'entreprise »*.

Le 6 février 2019, lors d'une réunion extraordinaire, le CCE a décidé de mettre en œuvre la procédure d'alerte économique estimant que les informations communiquées par la direction étaient *« loin de répondre avec suffisamment de précisions aux questions soulevées par le CCE. En particulier la nature des faits remontés* [serait] *très floue, le plan d'investissement* [le serait] *tout autant et un budget de déménagement n'est pas établi »* et qu'elles n'étaient pas *« non plus de nature à apaiser les craintes du CCE sur l'avenir de la société et des emplois »*. Les élus du CCE ont ainsi résolu *« de déclencher la procédure de droit d'alerte »* et de se faire assister du *« cabinet d'expertise-comptable EXPLICITE sis 3 rue Bayard à LILLE »*.

A la faveur d'une délibération du 14 mars 2019, le CCE a décidé de retirer le mandat donné au cabinet EXPLICITE pour le confier à un nouvel expert-comptable, le cabinet ALTER EXPERTISES, 67 rue Victor Hugo à Macon, *« afin de les aider à poursuivre le droit d'alerte lancé par les élus du comité central d'entreprise le 6 février 2019 »*. La délibération précisait qu'il appartiendrait *« à la direction de lui envoyer les documents sollicités à première demande du cabinet ALTER, ainsi que tous les documents envoyés précédemment au cabinet EXPLICITE sur ce droit d'alerte »*.

Le 15 mars 2019, les experts-comptables de la société ont adressé au président du CCE de la société OFFICE DEPOT FRANCE une lettre détaillant *« les modalités de* [leur] *intervention »* au titre de la mission qui leur avait été confiée en vertu de la procédure d'alerte économique, tendant à établir *« un rapport permettant de comprendre et d'apprécier la situation économique, financière, sociale et stratégique de l'entreprise ainsi que ses perspectives »* et à *« traiter les faits préoccupants soulevés par le CCE :*
*1) Éléments préoccupants concernant l'actif immobilier avec impact sur l'avenir économique de la structure OD France:*
*En 2008, les structures d'exploitation d'`OD devenues OD France disposaient d'un actif immobilier constitue, au minima de : Terrains (Senlis, Entrepôt de Saint Martin de Crau, Call de Nîmes), Plateformes (Eysines, Ormes, Souffleweyersheim, Noyal sur vilaine, Vénissieux, Agence Vénissieux), Magasins (Eragny, Vénissieux, Creteil, Grande Armée, Souffleweyersheim, Englos, Nîmes, Montpellier, Mérignac, Labège, Ballainvilliers, Rouen, Reims). Aujourd'hui, vous nous annoncez qu'il n'y a plus que 9 magasins et SENLIS détenus par OD Participations, étant précisé que le CCE n'a jamais été consulté sur ces ventes de biens immobiliers ce qui constitue bien sûr une entrave à son fonctionnement.*
*Quand, comment et à quelles conditions les filiales d'exploitation ont elles cédé chacun de ces biens immobiliers, à qui à quelle date et pour quel montant ?*
*Détail par immeuble/ plateforme et magasins ?*
*2) Les flux financiers entre les sociétés du groupe OD*
*Quelle est la structure juridique complète de l'actionnariat au-delà de BV Holding qui est aux Pays-Bas ?*
*Quelles sont les conventions qui lient OD France, filiale d'exploitation qui fait vivre le groupe avec les autres entités du groupe ?*

2

*Pourquoi OD Participations n'aurait jamais pu rembourser de 59 millions à OD France, alors qu'OD Participations avait en propriété les bâtiments de SENLIS et facturait 3 M par an à ODBS pour utiliser les locaux (PV janvier 2019 et PV décembre 2017)?*
*Pourquoi avoir accepté d'annuler cette dette ? quel est l'intérêt d'OD France dans cette opération ? sans annuler les loyers règles et transférer la propriété de SENLIS qui vaut au bas mot 20 M à ce moment?*
*Les commissaires aux comptes ont-ils validé cette opération sans émettre de réserves ?*
*Les élus demandent la communication des rapports des commissaires aux comptes de OD France et OD Participations sur les années 2017/2018.*
*Quels sont les flux financiers qui lient OD France a OD Participations ? (refacturation des salaires des PDG, DAF, et autres cadres dirigeants...) et à OD EUROPE, et aux autres entités du groupe?*
*Les élus demandent la communication des comptes complets des trois dernières années des entités du groupe qui ont des flux financiers avec OD France et le détail des flux.*
*Pourquoi les sociétés holdings sont-elles logées aux Pays bas ?*
*Quelles facturations a OD France ?*
*A quoi servent ces deux premières sociétés aux pays bas (HETEYO Holding BV et OD Operations Holding BV?)*
*Aujourd'hui vous annoncez que OD France est déficitaire de 12 millions d'euros ...*
*Comment pourrait-elle être bénéficiaire avec des coûts supportés par elle seule de la facturation de toutes les sociétés du Groupe et personne pour défendre ses intérêts ?*
*Le déficit d'office DEPOT France est-il le résultat d'une organisation financière du groupe?*
*Montant de la vente, sort du prix de la vente et prix du loyer dans l'hypothèse d'une vente du bien immobilier de Senlis ».*

Le même jour, la société d'expertise comptable ALTER a sollicité de la direction la communication des documents suivants :
*1. Contrat de cession (Share Purchase Agreement) d'Office Depot Europe par Office Depot Inc. à Aurelius Equity Opportunities SE & Co avec les annexes*
*2. Plan d'affaires à 5 ans d'Office Depot Europe réalisé par Aurelius. avec détail au niveau d'Office Depot France (projet stratégique, compte de résultat prévisionnel, hypothèses retenues, plan d'investissement et de financement)*
*3. Plan de retournement d'OD France et suivi à date comprenant notamment*
        *a) Actions prévues, mises en œuvre et restantes à mettre en œuvre*
        *b) Difficultés opérationnelles rencontrées dans l'application du plan de retournement (ruptures d'approvisionnements notamment)*
        *c) Compte de résultat prévisionnel à 3-5 ans consolidé et par activité*
        *d) Compte de résultat 2016, 2017 et 2018 consolidé et par activité*
        *e) Plan de financement prévisionnel à 3-5 ans consolidé (avec détail des principaux investissements)*
        *f) Tableau de financement 2016, 2017 et 2018 (avec détail des principaux investissements)*
*4. Étude du marché de la vente d'équipements de bureaux et de consommables en France, avec notamment*
        *a) La situation des principaux concurrents*
        *b) L'estimation des parts de marché d'OD sur les 3 dernières années*
        *c) Les perspectives à 3 ans*
*5. Documents comptables concernant OD France pour les exercices 2016, 2017 et 2018*
        *a) Liasses fiscales complètes*
        *b) Balances générales*
        *c) Formulaires N°DAS2*
        *d) Rapport des commissaires aux comptes*
        *e) Rapport de gestion*
        *f) Procès-verbaux des réunions d'A.G.*
        *g) Contrats d'affacturage le cas échéant*

3

*6. Documents comptables concernant OD Business Solutions pour les exercices 2016 et 2017*
        *a) Liasses fiscales complètes*
        *b) Balances générales*
        *c) Formulaires N°DAS2*
        *d) Rapport des commissaires aux comptes*
        *e) Rapport de gestion*
        *f) Procès-verbaux des réunions d'A.G.*
        *g) Contrats d'affacturage le cas échéant*
*7. Documents comptables concernant OD Participations pour les exercices 2016, 2017 et 2018*
        *a) Liasses fiscales complètes*
        *b) Balances générales*
        *c) Formulaires N°DAS2*
        *d) Rapport des commissaires aux comptes*
        *e) Rapport de gestion*
        *f ) Procès-verbaux des réunions d'A.G.*
*8. Rapports des commissaires aux comptes avec les annexes (compte de résultat, bilan, affectation du résultat net notamment) pour les exercices 2016, 2017 et 2018 des sociétés suivantes:*
        *a) Heteyo Holding BV*
        *b) Office Dépôt France Holding Two BV*
        *c) Office Dépôt France Holding BV*
        *d) ODE Holding BV*
        *e) OD intUK Ltd*
        *f) Office Depot Europe Holding GmbH*
        *g) Aurelius Equity Opportunities SE & Co*
*9. Contrats de prix de transferts entre OD France et les sociétés liées (à la fois les contrats en vigueur avant la reprise par Aurelius et ceux effectifs depuis), ou à défaut documents détaillant*
        *a) La nature des prestations fournies/reçues. avec précisions sur le fonctionnement des « European rebates ››*
        *b) Les sociétés concernées*
        *c) Le mode de calcul des prix de transferts*
        *d) La répartition des coûts totaux par pays/entités*
*10. Documents transmis au Commissaire au Compte justifiant l'abandon de créance de 59 M€ par OD France en faveur d`OD Participations*
*11. Rapports d'expert immobilier concernant l'estimation des biens immobiliers (terrains, plateformes, magasins) cédés depuis la reprise par Aurelius*
*12. Bilan sociaux 2016, 2017 et 2018 d'OD France*
*13. Bilan sociaux 2016 et 2017 d'OD BS*
*14. Accès à la BDES ».*

Par courriels du 26 mars, du 4 avril, du 19 avril et du 14 mai 2019, l'expert-comptable ALTER a renouvelé ses demandes de communication de documents manquants et formulé plusieurs demandes d'informations.

Le 2 mai 2019, le cabinet ALTER a établi un rapport d'étape indiquant présenter, non pas la version finale de ses travaux, mais *« une analyse de la situation d'OD France sur la base des informations, très incomplètes par rapport à* [ses] *demandes reçues à ce jour »*, et comportant des *« demandes d'informations actualisées au 2 mai 2019 figur*[ant] *en annexe 1 ».*

Par exploit d'huissier du 20 mai 2019, le CCE de la société OFFICE DEPOT FRANCE a fait assigner la SAS OFFICE DEPOT FRANCE devant le président du tribunal de grande instance de SENLIS, statuant en référé, sur le fondement des articles L. 2323-50, L. 2323-51, L. 2325-35, L. 2325-36, L. 2323-37 du code du travail, L. 233-3, L. 823-13 et L. 823-14 du code du commerce et l'article 809 du code de procédure civile, aux fins de voir :
- déclarer le comité Central d'entreprise d'OFFICE DEPOT France recevable et bien fondé en son action et y faisant droit,
- constater que le refus de communiquer les documents à l'expert-comptable du Comité central d'entreprise est un trouble manifestement illicite qu'il convient de faire cesser.

En conséquence,
- ordonner à la société OFFICE DEPOT FRANCE sous astreinte de 10.000 € par jour de retard et par document dans les 8 jours à compter du prononcé de la décision à intervenir de communiquer au cabinet d'expertise comptable ALTER :
. *Le Contrat de cession entre OD INC et AURELIUS d'Office DEPOT Europe et ses annexes*
. *Le Plan de retournement d'OFFICE DEPOT France prévu lors de l'achat au 1er janvier 2017, comprenant le compte de résultat prévisionnel à 3-5 ans consolidé par activité, le compte de résultat 2016, le plan de financement prévisionnel à 3-5 ans (avec détail des principaux investissements) et le tableau de financement 2016, 2017 et 2018 (avec détail des principaux investissements)*
. *Les comptes OFFICE DEPOT France définitifs exercice 2018 (liasses fiscales complètes 2018, balances générales 2018, rapport des commissaires aux comptes 2018 et rapport de gestion 2018)*
. *Les Comptes OD PARTICIPATIONS définitifs exercice 2018 (liasses fiscales complètes 2018, balance générale 2018, rapport des commissaires aux comptes 2018 et procès-verbaux des réunions d'AG 2018)*
. *Les rapports des commissaires aux comptes avec les annexes, obligatoires dans les pays européens (comptes de résultat, bilan, affectation du résultat net notamment) pour les exercices 2016, 2017 et 2018 des sociétés holdings de OFFICE DEPOT France (Heteyo holding BV, Office Depot France Holding two BV, Office Depot France Holding BV, ODE Holding BV, OD Int UK Ltd, Office Depot Europe Holding Gmbh et Aurelius Equity Opportunity SE& Co)*
. *Les contrats de prix de transferts entre OFFICE DEPOT France et les sociétés liées et notamment les contrats complets avec ECIT et GTM pour 2017 et 2018 et OFFICE DEPOT International BV.*
. *La situation de trésorerie d'OFFICE DEPOT France à la date la plus récente (2019) et les prévisions de trésorerie jusqu'à fin 2019*
. *Les budgets OFFICE DEPOT France 2019 et 2020*
. *Le rapport d'audit réalisé en 2019 par Eight Advisory sur OFFICE DEPOT France*
. *Les lettres de Mission et factures correspondantes à 1,7M€ facturés à OD Participations par le cabinet Alvarez & Marsal (société de l'ancien dirigeant d'OFFICE DEPOT France jusqu'en avril 2019) et rapports d'audits du cabinet ALVAREZ et MARSAL*
. *Les rapports des commissaires aux comptes avec les annexes (bilans, comptes de résultats et affectation du résultat) pour les exercices 2016, 2017 et 2018 des sociétés du groupe AURELIUS ayant contracté avec OFFICE DEPOT France dont GTM et ECIT*
. *La communication du comparatif coût/prestation entre l'ancien prestataire IBM et GETRONICS*
- Ainsi que les réponses (documents) aux questions suivantes :
- *Avec quelles autres sociétés du groupe AURELIUS, OFFICE DEPOT France a-t-elle conclu des contrats de prestations commerciales ?*
- *OFFICE DEPOT France a-t-elle remporté des contrats avec les sociétés du groupe Aurelius*
- *Quelle est la société avec laquelle AURELIUS était en pourparlers pour une éventuelle cession des sociétés OFFICE DEPOT Françaises*
- *Communication du courrier d'OD INC à OFFICE DEPOT suite à la cession de sa participation.*

- se réserver la liquidation l'astreinte en cas d'inexécution ou d'inexécution partielle de la décision à intervenir.
- condamner la société OFFICE DEPOT FRANCE à verser aux requérants la somme de 3.600 € en application de l'article 700 du Code de Procédure Civile.
- condamner la société OFFICE DEPOT FRANCE aux dépens de la présente instance comprenant les frais de signification et d'exécution.

A l'audience du 28 mai 2019, le CCE OFFICE DEPOT FRANCE, représenté par son conseil, a réitéré ses prétentions. Il a notamment exposé le contexte qui l'a conduit à déclencher la procédure d'alerte, sa préoccupation quant à la survie de la société tandis qu'il avait été annoncé par la direction que la trésorerie actuelle d'OFFICE DEPOT FRANCE était insuffisante pour passer l'été sans la vente du site de Senlis et que le groupe AURELIUS qui a fait l'acquisition le 1er janvier 2017 des filiales opérationnelles françaises, OFFICE DEPOT FRANCE et OD BS pour 1 euro à l'actionnaire américain OFFICE DEPOT INC, serait connu pour une pratique consistant à reprendre une société et à assécher sa trésorerie avant que celle-ci ne soit liquidée et que le sort des salariés ne soit pris en charge par le FNGS et POLE EMPLOI.

5

Le CCE OFFICE DEPOT FRANCE a indiqué que la SAS OFFICE DEPOT FRANCE lui avait communiqué plusieurs documents dans l'intervalle de l'assignation et de l'audience mais a maintenu sa demande tendant à ordonner à la société défenderesse de lui communiquer l'ensemble des annexes au contrat de cession entre OD INC et AURELIUS d'Office DEPOT, le plan de financement prévisionnel avec le détail des principaux investissements, les comptes OFFICE DEPOT FRANCE définitifs exercice 2018, les rapports des commissaires aux comptes des sociétés holdings de OFFICE DEPOT FRANCE, un état de la trésorerie d'OFFICE DEPOT FRANCE et des sociétés liées, et non pas seulement une courbe de projection, les budgets OFFICE DEPOT FRANCE 2019 et 2020, le rapport d'audit réalisé en 2019 par Eight Advisory sur OFFICE DEPOT FRANCE, les rapports d'audits du cabinet ALVAREZ ET MARSAL, les rapports des commissaires aux comptes avec les annexes des sociétés du groupe AURELIUS précisant qu'il manquerait les comptes d'OFFICE DEPOT INTERNATIONAL BV, le comparatif coût/prestation entre l'ancien prestataire IBM et GETRONICS, exposant que les chiffres leur ont été communiqués, sans explications sur les prestations.

Par écritures soutenues à l'audience, la société ALTER a sollicité son intervention volontaire à la présente instance, qu'il soit fait droit à la demande principale présentée par le CCE de la société OFFICE DEPOT FRANCE et la condamnation de la société OFFICE DEPOT FRANCE à verser à la société ALTER la somme de 1500 euros au titre de l'article 700 du code de procédure civile ainsi qu'aux entiers dépens de l'instance. Elle a notamment fait valoir que dans le cadre de la mission qui lui a été confiée, l'expert-comptable du comité central d'entreprise possède les mêmes pouvoirs d'investigation que le commissaire aux comptes dès lors qu'il peut, comme ce dernier, se faire communiquer toutes les pièces qu'il estime utiles à l'exercice de sa mission mais aussi analyser les aspects économiques de l'activité de l'entreprise, ses perspectives d'avenir et son environnement social, économique et financier, que ses investigations peuvent s'étendre aux sociétés mères comme aux sociétés filiales, que l'expert-comptable apprécie seul l'utilité des documents qu'il réclame. La société ALTER a exposé qu'il ne saurait lui être opposé la confidentialité du contrat de cession sollicité en ce que l'expert-comptable est tenu à une obligation de secret et de discrétion et soumis au secret professionnel et a soutenu que le refus opposé par la société OFFICE DEPOT FRANCE de communiquer les documents demandés serait constitutif d'un trouble manifestement illicite.

Soutenant oralement ses écritures à l'audience, la SAS OFFICE DEPOT FRANCE a sollicité de la juridiction de céans, à titre principal, qu'il soit dit n'y avoir lieu à référé, à titre subsidiaire, que le CCE de la société OFFICE DEPOT FRANCE et la société ALTER soient déboutés de leurs demandes et, en tout état de cause, de condamner le CCE et la société ALTER à lui payer la somme de 5000 euros au titre de l'article 700 du code de procédure civile et au paiement des entiers dépens de l'instance. La SAS OFFICE DEPOT FRANCE a notamment exposé qu'il ne peut y avoir de trouble manifestement illicite et donc ne saurait y avoir lieu à référé en l'absence de refus de communication de documents de la société OFFICE DEPOT FRANCE. Elle a fait valoir qu'il appartient au juge de vérifier la nécessité des documents demandés au regard de la mission de l'expert et que les documents sollicités doivent avoir un lien avec la mission de la société ALTER dans le cadre du droit d'alerte.

Au terme de l'audience, la SAS OFFICE DEPOT FRANCE s'est engagée sur procès-verbal dressé par le greffier d'audience à fournir les efforts nécessaires pour obtenir les documents sollicités, sans toutefois pouvoir s'engager à une obligation de résultat. L'affaire a été renvoyée à l'audience du 11 juin 2019.

A l'audience du 11 juin 2019, le CCE OFFICE DEPOT FRANCE a fait valoir l'absence du respect du principe de la contradiction au regard des conclusions responsives communiquées par la SAS OFFICE DEPOT FRANCE ce même jour à 11h25. Il a par ailleurs sollicité que soient écartées les pièces communiquées par la défenderesse qui ne correspondraient pas au bordereau ou bien qu'un bordereau de communication de pièces clair et complet soit fourni en cours de délibéré.

6

La société ALTER a par ailleurs invoqué une violation du respect du principe de la contradiction tenant à la communication tardive des écritures de la défenderesse à 11h25 sollicitant que ces écritures soient écartées, à la différence toutefois des pièces communiquées par la SAS OFFICE DEPOT FRANCE. Elle a soutenu que la trésorerie de cette dernière serait alarmante.

Au terme de l'audience du 11 juin 2019, le CCE OFFICE DEPOT FRANCE et la société ALTER ont indiqué ne plus solliciter la communication au cabinet ALTER par la SAS OFFICE DEPOT FRANCE :
- du contrat de cession d'OFFICE DEPOT INC à AURELIUS d'OFFICE DEPOT EUROPE, fourni avant l'audience du 28 mai 2019,
- du plan de retournement pour 3 ans d'OFFICE DEPOT FRANCE, prévu lors de l'achat au 1er janvier 2017, fourni avant l'audience du 28 mai 2019,
- des comptes OFFICE DEPOT FRANCE définitifs exercice 2018 (liasses fiscales complètes 2018, balances générales 2018, rapport des commissaires aux comptes 2018 et rapport de gestion 2018), lesquels seront fournis à l'expert comptable après validation par les commissaires aux comptes, le CCE et l'expert indiquant s'en rapporter à la diligence de ces derniers et à l'engagement de la direction de l'entreprise des les fournir dès validation,
- des comptes OD PARTICIPATIONS définitifs exercice 2018 (liasses fiscales complètes 2018, balance générale 2018, rapport des commissaires aux comptes 2018 et procès-verbaux des réunions d'AG 2018), lesquels seront fournis à l'expert comptable après validation par les commissaires aux comptes, le CCE et l'expert indiquant s'en rapporter à la diligence de ces derniers et à l'engagement de la direction de l'entreprise des les fournir dès validation,
- des contrats de prix de transferts entre OFFICE DEPOT FRANCE et les sociétés liées et notamment les contrats complets avec ECIT et GTM pour 2017 et 2018 et OFFICEDEPOT International BV, fournis avant l'audience du 28 mai 2019,
- la situation de trésorerie d'OFFICE DEPOT France à la date la plus récente (2019), fourni avant l'audience du 28 mai 2019,
- les lettres de mission et factures correspondantes à 1,7Meuros facturés à OD Participations par le cabinet Alvarez et Marsal (le CCE rappelle dans son assignation qu'il s'agit de la société de l'ancien dirigeant d'OFFICE DEPOT FRANCE jusqu'en avril 2019).

En revanche, le CCE et le cabinet ALTER maintiennent leur demande tendant à ordonner à la société OFFICE DEPOT FRANCE, sous astreinte, de communiquer aux experts-comptables de la société ALTER :
- l'ensemble des documents annexés au contrat de cession d'OFFICE DEPOT INC à AURELIUS d'OFFICE DEPOT EUROPE,
- le détail des principaux investissements dans le plan de retournement prévisionnel à 3 ans, effectués sur les années 2016, 2017 et 2018 et le tableau de financement au 1er janvier 2017, soit l'ensemble du prévisionnel au moment de l'achat, et pas seulement le « *réalisé* » tel que communiqué par la société défenderesse,
- les rapports des commissaires aux comptes avec les annexes, obligatoires dans les pays européens (comptes de résultat, bilan, affectation du résultat net notamment), pour les exercices 2016, 2017 et 2018 des sociétés holdings de OFFICE DEPOT FRANCE (Heteyo holding BV, Office Depot France Holding two BV, Office Depot France Holding BV, ODE Holding BV, OD Int UK Ltd, Office Depot Europe Holding Gmbh et Aurelius Equity Opportunity SE& Co),
- les prévisions de trésorerie jusqu'à fin 2019, sous la forme d'un document officiel avec tampon officiel de la direction d'OFFICE DEPOT FRANCE, soit un tableau prévisionnel de la trésorerie 2019,
- les budgets OFFICE DEPOT France 2019 et 2020,
- le rapport d'audit réalisé en 2019 par Eight Advisory sur OFFICE DEPOT France,
- les rapports d'audits du cabinet ALVAREZ et MARSAL, et non le simple « *draft* » de février 2017 transmis pour l'audience du 11 juin 2019 qui serait « *un simple projet* » selon le CCE,

- les rapports des commissaires aux comptes avec les annexes (bilans, comptes de résultats et affectation du résultat) pour les exercices 2016, 2017 et 2018 des sociétés du groupe AURELIUS ayant contracté avec OFFICE DEPOT France dont Getronics, GTM, ECIT, OD International BV, OFFICE DEPOT Service Center SRL, et pas des balances comptables telles que celles fournies dans l'intervalle des deux audiences,
- la communication du comparatif coût / prestation entre l'ancien prestataire IBM et GETRONICS.

S'agissant des réponses documentées aux questions énoncées précédemment :
- *Avec quelles autres sociétés du groupe AURELIUS, OFFICE DEPOT France a-t-elle conclu des contrats de prestations commerciales ?*
Une réponse a été fournie le 9 juin 2019 par la direction de la société défenderesse dont l'analyse a déterminé le CCE à étendre lors de l'audience du 11 juin suivant sa demande de communication de pièces à l'expert des rapports des commissaires aux comptes pour les exercices 2016, 2017 et 2018, outre ECIT et GTM visées dans l'assignation, pour les sociétés Getronics, OD International BV, OFFICE DEPOT Service Center SRL.

- *OFFICE DEPOT France a-t-elle remporté des contrats avec les sociétés du groupe AURELIUS?*
LE CCE juge néanmoins la réponse *« erronée »* et *« fallacieuse »* selon laquelle la société AURELIUS ne posséderait pas de sociétés en FRANCE à l'exception d'OFFICE DEPOT FRANCE, si ce n'est pas des participations comme l'a indiqué la société défenderesse à l'audience.

- *Quelle est la société avec laquelle AURELIUS était en pourparlers pour une éventuelle cession des sociétés OFFICE DEPOT Françaises.*
Pas de réponse fournie

- *Communication du courrier d'OD INC à OFFICE DEPOT suite à la cession de sa participation.*
Pas de réponse fournie.

Pour un plus ample exposé des faits et prétentions des parties, il convient de se référer à l'acte introductif d'instance et aux écritures des parties remises, visées et soutenues à l'audience du 11 juin 2019.

La décision a été mise en délibéré au 25 juin 2019.

## **MOTIFS**

### **Sur la recevabilité de l'intervention volontaire**

Aux termes des article 325 et 330 du code de procédure civile, l'intervention n'est recevable que si elle se rattache aux prétentions des parties par un lien suffisant, l'intervention accessoire venant à l'appui des prétentions d'une partie, dont l'auteur a intérêt, pour la conservation de ses droits, à soutenir cette partie.

En l'espèce, l'intérêt à agir de la société ALTER et le lien suffisant entre ses demandes et les prétentions originaires sont caractérisés par l'identité même de l'intervenant, société d'expertise comptable mandatée le 14 mars 2019 par le CCE de la société OFFICE DEPOT FRANCE, pour l'assister en vue de l'établissement du rapport prévu à l'article L. 2323-50 du code du travail, au titre du droit d'alerte économique mis en œuvre le 6 février 2019.

Il convient, par conséquent, de recevoir l'intervention accessoire de la société ALTER, dont l'intérêt à soutenir la demande principale présentée par le CCE de la société OFFICE DEPOT FRANCE est démontré.

### **Sur les pièces produites à l'appui des conclusions de la SAS OFFICE DEPOT FRANCE et le respect du principe de la contradiction**

Aux termes des articles 15 et 16 du code de procédure civile, en application des principes directeurs du procès civil communs à toutes les juridictions, les parties doivent se faire connaître mutuellement en temps utile les moyens de fait sur lesquels elles fondent leurs prétentions, les éléments de preuve qu'elles produisent et les moyens de droit qu'elles invoquent, afin que chacune soit à même d'organiser sa défense. Le juge doit, en toutes circonstances, faire observer et observer lui-même le principe de la contradiction.

8

L'article 753 du code précité prévoit que les conclusions doivent formuler expressément les prétentions des parties ainsi que les moyens en fait et en droit sur lesquels chacune de ces prétentions est fondée. Un bordereau énumérant les pièces justifiant ces prétentions est annexé aux conclusions.

En l'espèce, le CCE sollicite, d'une part, d'écarter les écritures de la SAS OFFICE DEPOT FRANCE qui lui ont été communiquées le jour de l'audience, le 11 juin 2019 à 11h25, et, d'autre part, la production d'un bordereau clair et détaillé.

La société ALTER précise qu'il convient d'écarter seulement les conclusions susmentionnées produites par la société défenderesse, à 11h25 le 11 juin 2019, sans que cette demande n'ait à s'étendre aux pièces communiquées entre l'audience de référés du 28 mai et celle du 11 juin 2019.

Si la société défenderesse a pu présenter oralement, le jour de l'audience, ses moyens et prétentions, et les faire ainsi connaître au CCE de la société OFFICE DEPOT FRANCE et au cabinet ALTER, lesquels ont pu répliquer à la faveur du débat d'audience, les écritures de la SAS OFFICE DEPOT FRANCE intitulées « conclusions en réponse » et communiquées le 11 juin 2019 par la SAS OFFICE DEPOT FRANCE, ce que l'avocate de cette dernière n'a pas contesté, doivent être écartées comme tardives par respect du principe de la contradiction, en application de l'article 16 précité.

La société ALTER et le CCE ne s'opposant pas à la production et l'examen des pièces récemment communiquées par la défenderesse, sollicitant toutefois la communication d'un bordereau détaillé ou, à défaut, d'écarter les pièces qui ne correspondraient pas au bordereau, il s'ensuit que cette sanction de l'irrespect du principe de la contradiction n'a pas à s'étendre aux pièces communiquées aux parties par la SAS OFFICE DEPOT FRANCE entre l'audience de référés du 28 mai et celle du 11 juin 2019, notamment le 9 juin 2019, et pas davantage au bordereau qui les accompagne. S'agissant de la demande de communication d'un bordereau plus détaillé, dès lors que la juridiction de céans n'a pas entendu autoriser la production de notes en délibéré, et dans la mesure où les parties ne s'opposent pas à la production des pièces n° 13 à 20, non visée audit bordereau, leurs demandes tendant précisément à la communication à l'expert-comptable de documents nécessaires à l'accomplissement de sa mission, les pièces communiquées par la SAS OFFICE DEPOT FRANCE le 9 juin 2019 ayant pu être débattues contradictoirement lors de l'audience, sous notre office, il n'y a pas lieu d'enjoindre à la société défenderesse de produire un bordereau plus amplement détaillé.

**Sur les textes applicables au droit d'alerte économique par un comité d'entreprise**

Il convient de relever que l'ordonnance n° 2017-1386 du 22 septembre 2017 relative à la nouvelle organisation du dialogue social et économique dans l'entreprise et favorisant l'exercice et la valorisation des responsabilités syndicales a modifié les dispositions du code du travail relatives au droit d'alerte économique, au fonctionnement des comités d'entreprise et à leur mission générale d'information et de consultation du comité d'entreprise

Aux termes de l'article 9 de l'ordonnance précitée, le CSE (comité social et économique) est mis en place au terme du mandat des délégués du personnel ou des membres élus du comité d'entreprise, de la délégation unique du personnel, de l'instance regroupée mise en place par accord du comité d'hygiène, de sécurité et des conditions de travail, lors du renouvellement de l'une de ces institutions, et au plus tard le 31 décembre 2019. Ainsi, les délégués du personnel, le comité d'entreprise, le comité d'hygiène, de sécurité et des conditions de travail, la délégation unique du personnel et l'instance regroupée demeurent soumis aux dispositions qui leur étaient propres avant l'entrée en vigueur de l'ordonnance, et ce, jusqu'à leur disparition.

Dès lors qu'il apparait, à la lumière des débats, que le comité social et économique (CSE) n'a pas encore été mis en place au sein de la SAS OFFICE DEPOT, aucune des hypothèses envisagées par l'article 9 précité susceptibles de donner un terme anticipé au mandat du CCE n'étant à l'évidence intervenu au sein de cette entreprise, dès lors que c'est ce dernier qui a déclenché la procédure d'alerte économique, il convient de se référer aux anciennes dispositions du code du travail, avant leur abrogation au 1er janvier 2018.

9

**Sur l'existence d'un trouble manifestement illicite et l'intervention du juge des référés**

En vertu des dispositions de l'article 809, alinéa 1, du code de procédure civile, le juge des référés peut toujours, même en présence d'une contestation sérieuse, prescrire en référé les mesures conservatoires ou de remise en état qui s'imposent, soit pour prévenir un dommage imminent, soit pour faire cesser un trouble manifestement illicite.

Le trouble manifestement illicite s'entend de toute perturbation résultant d'un fait qui, directement ou indirectement, constitue une violation évidente de la règle de droit. L'existence d'une contestation sérieuse n'interdit pas au juge des référés de prendre les mesures prévues à l'article précité.

En vertu de l'article L.2323-50 du code du travail, lorsque le comité d'entreprise a connaissance de faits de nature à affecter de manière préoccupante la situation économique de l'entreprise, il peut demander à l'employeur de lui fournir des explications. Si le comité d'entreprise n'a pu obtenir de réponse suffisante de l'employeur ou si celle-ci confirme le caractère préoccupant de la situation, il établit un rapport. Aux termes de l'article L.2323-51 du code précité, le comité d'entreprise ou la commission économique peut se faire assister, une fois par exercice comptable, de l'expert-comptable prévu à l'article L.2323-35.

La société défenderesse soutient que la définition de l'objet même de la mission détaillée dans la lettre de mission de l'expert ne visait aucunement les conditions de la cession du groupe OFFICE DEPOT en Europe d'OFFICE DEPOT Inc. à AURELIUS, celle-ci ayant été réalisée plus de deux ans avant la mise en œuvre du droit d'alerte économique. Elle fait valoir que la SAS OFFICE DEPOT FRANCE n'a pas opposé de refus de communiquer les pièces sollicitées par le cabinet ALTER, procédant au contraire à l'envoi de nombreux documents. Elle expose, en outre, que certains documents ne seraient pas encore disponibles, notamment les budgets OFFICE DEPOT FRANCE 2019 et 2020 et le rapport d'audit réalisé en 2019 par Eight Advisory sur OFFICE DEPOT FRANCE qui ne le seront que courant juillet 2019, s'engageant à les fournir après cette échéance.

Elle affirme, par ailleurs, que la communication de l'ensemble des documents annexés au contrat de cession d'OFFICE DEPOT Inc. à AURELIUS d'OFFICE DEPOT EUROPE ne serait absolument pas nécessaire à la mission de l'expert telle que définie par les résolutions du CCE sur le droit d'alerte et la lettre de mission du cabinet ALTER du 15 mars 2019 invoquant, au surplus, le caractère confidentiel de certains documents ou informations sollicités. La société défenderesse ajoute que seuls les rapports des commissaires aux comptes avec leurs annexes pour les exercices 2016, 2017, 2018 des sociétés du groupe AURELIUS, GTM et ECIT, avaient été sollicités initialement, et non pas toutes les sociétés du groupe AURELIUS ayant contracté avec OFFICE DEPOT FRANCE. La SAS OFFICE DEPOT FRANCE sollicite que le juge des référés procède au contrôle de la nécessité des documents demandés au regard de la mission de l'expert.
Il convient, tout d'abord, de rappeler que l'appréciation du caractère préoccupant des faits qui motivent l'engagement de la procédure d'alerte relève de la seule compétence du comité d'entreprise, lequel est également seul compétent pour définir la mission de l'expert comptable qui s'étend aux faits de nature à confirmer la situation économique préoccupante de l'entreprise qui sont la suite nécessaire de ceux ayant motivé l'exercice du droit d'alerte. Le rôle de l'expert-comptable désigné au titre d'une procédure d'alerte porte en effet sur tous éléments d'ordre économique, financier ou social nécessaires à l'intelligence des comptes et à l'appréciation de la situation économique de l'entreprise.

Il sera également rappelé que, sauf à présenter une demande qui excéderait manifestement le champ de la mission confiée, il appartient au seul expert désigné sur le fondement des articles L.2323-35 et L.2323-51 précités d'apprécier les éléments qu'il estime nécessaires à son accomplissement et que pour opérer toute vérification ou tout contrôle entrant dans l'exercice de ses missions, l'expert-comptable a accès aux mêmes documents que le commissaire aux comptes conformément aux dispositions de l'article L.2325-37 du code du travail.

Si l'employeur peut contester la nature des documents dont communication est demandée par l'expert à l'occasion de sa mission, et notamment contester la nécessité de ces documents au

10

regard de la mission confiée par le comité d'entreprise comme l'affirme la SAS OFFICE DEPOT FRANCE, il reste que seul l'expert est en mesure de contrôler l'utilité concrète de ces documents en réalisant sa mission, sauf abus de droit caractérisé.

La mission de l'expert n'est pas exclusivement comptable et doit permettre au comité d'entreprise de connaître la situation économique sociale et financière de la société dans l'ensemble du groupe auquel il appartient et par rapport aux autres sociétés d'un groupe avec lesquels il doit pouvoir se comparer. Il en résulte que, lorsque la société fait partie d'un groupe, l'expert-comptable doit pouvoir accéder à l'information détenue par d'autres sociétés du groupe, quand bien même elles seraient situées à l'étranger. Au surplus, le secret professionnel ne saurait être opposé à l'expert-comptable dès lors qu'il ne l'est pas aux commissaires aux comptes.

Par ailleurs, le rôle de l'expert-comptable désigné au titre d'une procédure d'alerte porte sur tous éléments d'ordre économique, financier ou social nécessaires à l'intelligence des comptes et à l'appréciation de la situation économique de l'entreprise. L'expert étant seul juge des éléments utiles à l'exercice de sa mission, l'employeur est dès lors tenu de satisfaire à ses demandes à condition qu'elles n'excèdent pas l'objet légal de sa mission et que cette mission n'excède pas l'objet défini par le code du travail et le mandat qui lui a été confié. Il ne saurait toutefois exiger la production de documents qui n'existent pas et dont l'établissement n'est pas obligatoire pour l'entreprise.

En l'espèce, il ressort des pièces versées aux débats que le CCE de la société OFFICE DEPOT FRANCE a décidé, le 6 février 2019, d'engager la procédure d'alerte économique en raison de sa *« forte inquiétude quant à l'avenir de l'entreprise »* et aux conditions entourant *« la cession des biens immobiliers de* [cette dernière] *et* [les] *flux financiers entre les différentes structures du groupe »*, et en raison des *« craintes du CCE sur l'avenir de la société et des emplois »* que les réponses apportées par la direction de l'entreprise le 30 janvier 2019, *« loin de répondre avec suffisamment de précisions aux questions soulevées par le CEE »*, n'ont pas permis *« d'apaiser »*.

Le CCE a désigné le 14 mars suivant le cabinet d'expertise-comptable ALTER pour l'assister à l'occasion de cette procédure, lequel a informé la direction de la société OFFICE DEPOT FRANCE du cadre et du contenu de sa mission, par lettre du 15 mars 2019, tendant à établir *« un rapport permettant de comprendre et d'apprécier la situation économique, financière, sociale et stratégique de l'entreprise ainsi que ses perspectives »*, précisant traiter en particulier les *« éléments préoccupants concernant l'actif immobilier avec impact sur l'avenir économique de la structure OD FRANCE »* ainsi que *« les flux financiers entre les sociétés du groupe OD »*.

Par lettre du même jour, la société ALTER a réclamé à la société OFFICE DEPOT FRANCE une liste d'informations et de documents dont seulement une partie lui a été remise par l'employeur et un ensemble de questions dont partie est restée sans réponse.

Des demandes d'informations complémentaires ont été adressées le 26 mars 2019, portant notamment sur la *« situation de trésorerie à la date la plus récente et les prévisions de trésorerie mensuelle jusqu'à fin 2019 et les budgets 2019 et 2020 »*, le 4 avril 2019 concernant notamment *« les honoraires de 1,7millions d'euros facturés à OD Participations en 2018 par le cabinet Alvarez et Marsal »*, le 19 avril 2019 sollicitant notamment *« les rapports des commissaires aux comptes avec les annexes (comptes de résultat, bilan, affectation du résultat net notamment) pour les exercices 2016, 2017 et 2018 des sociétés du groupe AURELIUS suivantes : GTM et ECIT »*, le 26 avril 2019 sollicitant notamment *« les contrats de prix de transfert entre OD France et les sociétés liées (à la fois les contrats en vigueur avant la reprise par AURELIUS et ceux effectifs depuis»*

Les experts-comptable du cabinet ALTER ont établi un rapport d'étape, le 2 mai 2019, duquel il ressort que leur mission ne peut être menée à son terme au regard des seules informations *« très incomplètes par rapport à leurs demandes »* - *« la situation de trésorerie actuelle ne* [leur] *ayant* [notamment] *pas été transmise »* à cette date - fournies spontanément par la direction de la société OFFICE DEPOT FRANCE.

11

Par ailleurs, la SAS OFFICE DEPOT FRANCE n'a pas contesté la régularité du recours, par le CCE, à la procédure d'alerte et de la désignation, par ce dernier, d'un expert-comptable pour l'assister dans le cadre de cette procédure.

Le présent litige porte donc sur la communication des pièces réclamées par le cabinet ALTER durant ses échanges successifs avec la direction de l'entreprise OFFICE DEPOT FRANCE, puis au titre de son intervention volontaire accessoire à la demande principale du CCE devant le juge des référés, pour l'exécution de la mission qui lui a été confiée au titre de l'assistance du CCE de la société OFFICE DEPOT FRANCE, à l'occasion de la mise en œuvre de la procédure d'alerte économique.

Dans cette perspective, il appartient au CCE de la société OFFICE DEPOT FRANCE et à l'expert désigné, le cabinet ALTER, afin de caractériser l'existence d'un trouble manifestement illicite occasionné aux activités du comité central d'entreprise par une non-satisfaction des demandes de l'expert, de rapporter, pièce par pièce, la preuve de l'existence des documents dont il sollicite la communication ou de l'obligation légale dans laquelle se trouverait l'employeur d'avoir à les établir.

**Sur la communication sous astreinte de documents au cabinet d'expertise comptable désigné par le CCE**

Au jour où le juge statue, il résulte de la comparaison des écritures, de l'assignation, du récapitulatif auquel il a été procédé à l'audience et des pièces communiquées dans l'intervalle des audience des 28 mai et 11 juin, qu'un certain nombre de documents ont été fournis et ne font pas débat, tandis que d'autres restent en litige, dont la liste s'établit comme suit :
- l'ensemble des documents annexés au contrat de cession d'OFFICE DEPOT INC à AURELIUS d'OFFICE DEPOT EUROPE,
- le détail des principaux investissements dans le plan de retournement prévisionnel à 3 ans, effectués sur les années 2016, 2017 et 2018 et le tableau de financement au 1er janvier 2017, soit l'ensemble du prévisionnel au moment de l'achat, et pas seulement le *« réalisé »*,
- les rapports des commissaires aux comptes avec leurs annexes, obligatoires dans les pays européens (comptes de résultat, bilan, affectation du résultat net notamment), pour les exercices 2016, 2017 et 2018 des sociétés holdings de OFFICE DEPOT FRANCE (Heteyo holding BV, Office Depot France Holding two BV, Office Depot France Holding BV, ODE Holding BV, OD Int UK Ltd, Office Depot Europe Holding Gmbh et Aurelius Equity Opportunity SE& Co),
- les prévisions de trésorerie jusqu'à fin 2019, sous la forme d'un docuent avec tampon officiel de la direction d'OFFICE DEPOT FRANCE, soit un tableau prévisionnel de la trésorerie 2019,
- les budgets OFFICE DEPOT France 2019 et 2020,
- le rapport d'audit réalisé en 2019 par Eight Advisory sur OFFICE DEPOT France,
- les rapports d'audits du cabinet Alvarez et Marsal, et non le simple *« draft »* de février 2017 transmis pour l'audience du 11 juin 2019 qui serait *« un simple projet »* selon le CCE,
- les rapports des commissaires aux comptes avec les annexes (bilans, comptes de résultats et affectation du résultat) pour les exercices 2016, 2017 et 2018 des sociétés du groupe AURELIUS ayant contracté avec OFFICE DEPOT France dont Getronics, GTM, ECIT, OD International BV, OFFICE DEPOT Service Center SRL, et pas des balances comptables telles que celles fournies dans l'intervalle des deux audiences,
- la communication du comparatif coût / prestation entre l'ancien prestataire IBM et GETRONICS.

La SAS OFFICE DEPOT FRANCE affirme toutefois que certains documents sollicités n'existeraient pas ou ne seraient pas encore disponibles, notamment les rapports d'audits du cabinet Alvarez et Marsal ainsi que les budgets OFFICE DEPOT FRANCE 2019 et 2020 et le rapport d'audit réalisé en 2019 par Eight Advisory sur OFFICE DEPOT FRANCE, lesquels ne devraient être disponibles que courant juillet 2019. En l'état des dernières écritures du CCE et du cabinet ALTER devant le juge des référés et de leurs prétentions présentées oralement à l'audience, ceux-ci se bornent à affirmer l'existence de ces derniers documents sollicités auprès de la SAS OFFICE DEPOT FRANCE, s'étonnant de leur indisponibilité au regard de la taille de l'entreprise ou du prix des prestations facturées par le cabinet Alvarez et Marsal.

12

### *Sur les budgets OFFICE DEPOT FRANCE 2019 et 2020 et le rapport d'audit réalisé en 2019 par Eight Advisory sur OFFICE DEPOT FRANCE*

Si le CCE OFFICE DEPOT FRANCE et la société ALTER manifestent leur étonnement quant à l'indisponibililité des budgets OFFICE DEPOT FRANCE 2019 et 2020, sollicités par l'expert dans sa demande du 26 mars 2019, ils ne rapportent pas la preuve de leur existence tandis que la SAS OFFICE DEPOT FRANCE indique qu'ils devraient être disponibles dans le courant du mois de juillet 2019, ainsi que le rapport d'audit réalisé en 2019 par le cabinet Eight Advisory. S'agissant de ce dernier rapport, également sollicités par l'expert le 26 mars 2019, le CCE fait observer que *« Monsieur De Feydeau indique dans sa dernière communication aux salariés du 24 mai 2019 : "nous avons eu des rendez-vous en haut lieu au ministère des finances à qui nous avons également notre plan dans un cadre de transparence et de soutien"»*, ce dont il se déduirait qu'il s'agirait du *« plan de transformation construit et réalise par Eight Advisory »*.

Ne rapportant pas la preuve avec l'évidence requise en référé - au-delà de cette seule conjecture qui ne parvient pas à convaincre - de l'existence, plus précisément de la disponibilité de cette ensemble de pièces, dont la partie défenderesse assure qu'elle le recevra très prochainement, le CCE et le cabinet ALTER échouent à caractériser l'existence d'un trouble manifestement illicite occasionné de ce chef aux activités du comité central d'entreprise. Il sera par conséquent dit n'y avoir lieu d'ordonner la communication des budgets OFFICE DEPOT FRANCE 2019 et 2020 et le rapport d'audit réalisé en 2019 par Eight Advisory sur OFFICE DEPOT FRANCE.

### *Sur les rapports d'audits du cabinet Alvarez et Marsal*

La société défenderesse verse ainsi aux débats la copie de l'engagement conclu avec la société Alvarez et Marsal, prévoyant en son article 4 intitulé *« no audit, duty to update »* : *« it is understood that A&M is not being requested to perform an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the American Institute of Certified Public Accountants, the Securities and Exchange Commission or other state, national or international professional or regulatory body »*, dont il se déduit, par une traduction d'évidence, que cette relation contractuelle n'emporte nullement l'obligation d'établir un rapport d'audit.

A défaut pour les demandeurs d'apporter la preuve de l'existence de ces rapports d'audits ou de la justification de l'obligation légale pour les parties à l'engagement précité de procéder à la rédaction des documents ainsi sollicités, la démonstration du caractère manifestement illicite du trouble qu'ils auraient subi de ce chef n'est pas apportée.

Dans ces conditions, le comité central d'entreprise de la SAS OFFICE DEPOT FRANCE et la SARL ALTER seront déboutés de leurs demandes de communication sous astreinte à l'expert-comptable - au delà du *« draft »* de février 2017 transmis pour l'audience du 11 juin 2019 qui serait *« un simple projet »* selon le CCE - de rapports d'audits du cabinet Alvarez et Marsal. Il sera dit n'y avoir lieu à référé sur ce chef de demande.

### *Sur les rapports des commissaires aux comptes avec les annexes (bilans, comptes de résultats et affectation du résultat) pour les exercices 2016, 2017 et 2018 des sociétés du groupe AURELIUS ayant contracté avec OFFICE DEPOT France dont Getronics, GTM, ECIT, OD International BV, OFFICE DEPOT Service Center SRL*

Le CCE et le cabinet ALTER invoquent un trouble manifestement illicite pour soutenir leur demande de communication à l'expert des rapports des commissaires aux comptes avec leurs annexes (bilans, comptes de résultats et affectation du résultat) pour les exercices 2016, 2017 et 2018 des sociétés du groupe AURELIUS ayant contracté avec OFFICE DEPOT France, dont Getronics, GTM, ECIT, OD International BV, OFFICE DEPOT Service Center SRL - et pas seulement des balances comptables telles que celles fournies dans l'intervalle des deux audiences devant le juge des référés.

13

Toutefois, la société OFFICE DEPOT FRANCE fait valoir qu'elle ne saurait être condamnée en référé à communiquer, sous astreinte, les rapports des commissaires aux comptes de l'ensemble des sociétés du groupe AURELIUS ayant contracté avec OFFICE DEPOT France, tandis que l'expert, au titre des différentes demandes de communication de pièces, n'a sollicité ces documents que pour les sociétés GTM et ECIT.

Il ressort en effet de la demande d'informations complémentaire n°3 que la société ALTER a sollicité de la société OFFICE DEPOT FRANCE la communication des « *rapports des commissaires aux comptes avec les annexes (compte de résultat, bilan, affectation du résultat net notamment) pour les exercices 2016, 2017 et 2018 des sociétés du groupe AURELIUS suivantes: a. GTM  b. ECIT »* et non pas la communication desdits rapports pour chacune des sociétés du groupe AURELIUS ayant contracté avec OFFICE DEPOT France, étendue ainsi lors de l'audience du 11 juin à Getronics, OD International BV, OFFICE DEPOT Service Center SRL .

Il ne saurait dès lors être retenu un quelconque manquement par la SAS OFFICE DEPOT FRANCE à son obligation de communiquer les rapports des commissaires aux comptes, avec leurs annexes, concernant les sociétés Getronics, OFFICE DEPOT SERVICE CENTER SRL et OD INTERNATIONAL BV, ou tout autre société du groupe AURELIUS ayant contracté avec OFFICE DEPOT France, susceptible de caractériser un trouble manifestement illicite sur lequel pourrait se fonder l'exercice par la juridiction des référés de son pouvoir d'injonction. Une telle opposition n'est pas rapportée à l'occasion de l'exercice par le CCE de son droit d'alerte économique, à défaut pour la cabinet ALTER d'avoir sollicité la production de ces documents spécifiques avant l'introduction de l'instance.

Dans ces conditions, il sera dit n'y avoir lieu à référé sur la demande du comité central d'entreprise de la SAS OFFICE DEPOT FRANCE et de la Société ALTER tendant à la communication sous astreinte à l'expert-comptable des rapports des commissaires aux comptes avec les annexes (bilans, comptes de résultats et affectation du résultat) pour les exercices 2016, 2017 et 2018 des sociétés Getronics, OD International BV, OFFICE DEPOT Service Center SRL, ou tout autre société du groupe AURELIUS ayant contracté avec OFFICE DEPOT France.

### *Sur la communication du comparatif coût / prestation entre l'ancien prestataire IBM et GETRONICS.*

La SAS OFFICE DEPOT FRANCE expose également, pour répondre à la demande de communication d'un comparatif coût/prestation entre l'ancien prestataire IBM et celle de Getronics - sollicité par l'expert-comptable à la faveur de sa *« demande d'informations complémentaires n°3 »* du 19 avril 2019 - avoir établi, communiqué aux parties et versé aux débats un tel comparatif à la lumière des informations à sa disposition, alors même qu'elle n'en avait pas l'obligation légale. Elle affirme ne pas être en mesure de produire un document plus détaillé.

Le demandeur ne démontrant pas qu'un comparatif coût/prestation entre l'ancien prestataire IBM et GETRONICS devait être légalement établi par la SAS OFFICE DEPOT FRANCE, alors que cette dernière affirme qu'il n'existe pas d'autre document plus détaillé que celui déjà communiqué, il ne saurait être retenu un quelconque trouble manifestement illicite occasionné aux activités du comité central d'entreprise par l'absence de communication à l'expert d'un tel document.

Il sera dit n'y avoir lieu à référé sur la demande du comité central d'entreprise de la SAS OFFICE DEPOT FRANCE et de la SARL ALTER tendant à la communication sous astreinte à l'expert-comptable d'un comparatif coût/prestation entre l'ancien prestataire IBM et celle de GETRONICS.

### *Sur les autres demandes de communication sous astreinte*

Le conseil de la société OFFICE DEPOT FRANCE a exposé à l'audience que, s'agissant de documents détenus par des tiers, il appartient à la juridiction de déterminer non seulement la nécessité des documents demandés au regard de la mission confiée mais également de contrôler l'opportunité d'une telle communication et de vérifier que la société en cause est bien en mesure de les produire, toutes conditions qui feraient défaut en l'espèce.

14

Toutefois, l'expert-comptable doit aider le CCE à apprécier la situation de l'entreprise, le cas échéant en étendant ses investigations au groupe dans lequel il s'insère et émettre un avis sur l'origine et l'ampleur de ses difficultés, sa mission s'étendant aux faits de nature à confirmer la situation économique préoccupante de l'entreprise qui sont la suite nécessaire de ceux qui ont motivé l'exercice du droit d'alerte.

En l'espèce, il ressort des pièces versées aux débats, notamment de l'organigramme fourni par la direction de l'entreprise au CCE et issu du *« rapport annuel 2017 d'AURELIUS »* (résolution du CCE du 6 février 2019) que la société mère, actionnaire unique et holding financière à 100% d'OFFICE DEPOT FRANCE est la SAS OD PARTICIPATION FRANCE, laquelle est elle-même détenue par la société HETEYO Holding BV, situé aux Pays-Bas. 5 sociétés européennes complètent la structure juridique et capitalistique du groupe OFFICE DEPOT : OFFICE DEPOT FRANCE HOLDING TWO BV, OFFICE DEPOT FRANCE HOLDING BV, ODE HOLDING BV, OFFICE DEPOT EUROPE HOLDING GMBH et enfin le groupe AURELIUS, qui a fait l'acquisition en janvier 2017 du *« groupe européen»* à l'actionnaire américain OFFICE DEPOT INC (selon réponse de la direction au CCE en mars 2019). Le premier cabinet d'expert-comptable désigné par le CCE évoquait ainsi dans sa lettre de mission du 18 février 2019, *« une cascade de holdings dont ni l'utilité ni la pertinence n'apparaissent clairement (...) la stratégie affichée étant de traiter la France comme une entité autonome»*, relevant alors que *« la compréhension de ces liens est particulièrement importante»*. Le cabinet ALTER fait ainsi valoir que *« le caractère européen du groupe OFFICE DEPOT racheté et son intégration aux sociétés AURELIUS »* doivent nécessairement le conduire à étendre ses *« investigations (...) dans le cadre de la procédure d'alerte (...) aux sociétés que les holdings d'AURELIUS contrôlent »*, lesquelles sont *« liées économiquement entre elles »*.

La SAS OFFICE DEPOT FRANCE, tenue de satisfaire aux demandes de l'expert conformément aux dispositions combinées des articles L.2323-35, L.2323-51 et L.2325-37 du code du travail, ne peut dès lors valablement opposer que les documents relatifs aux sociétés et holdings précitées, dont elle reconnaît l'existence, seraient inutiles ou inopportuns dans la perspective de l'établissement du rapport prévu par l'article L. 2323-50 du code du travail. Comme énoncé précédemment, l'expert-comptable mandaté pour assister le CCE demeure seul compétent pour déterminer les documents utiles à sa mission, laquelle peut être étendue aux personnes ou entités qui la contrôlent et au groupe dans lequel la société s'insère. Il en résulte que, lorsque la société fait partie d'un groupe, l'expert-comptable doit pouvoir accéder à l'information détenue par d'autres sociétés du groupe, quand bien même elles seraient situées à l'étranger.

Dès lors que les demandes formées par le CCE et l'expert-comptable n'excèdent pas l'objet légal de sa mission et que cette mission n'excède pas l'objet défini par le code du travail et le mandat qui lui a été confié, étant précisé que les demandes de communication des rapports des commissaires aux comptes pour les exercices 2016, 2017, 2018, soit pour les trois années précédentes, n'apparaissent pas exorbitantes, la société défenderesse ne peut juger de l'utilité des documents litigieux dont le CCE de la société OFFICE DEPOT FRANCE demande la transmission au cabinet ALTER.

En conséquence, le moyen de défense de la SAS OFFICE DEPOT FRANCE se bornant à énoncer que les documents relatifs aux autres entités du groupe ne sont pas en sa possession et qu'elle échouerait à les obtenir malgré des sollicitations par courriels ne saurait être retenu comme pertinent, en ce qu'elle ne justifie pas, à l'évidence, d'une réelle impossibilité matérielle.

A la lumière de la lettre de mission adressée à la SAS OFFICE DEPOT FRANCE le 15 mars 2019 et de ses demandes d'informations complémentaires lors desquelles le cabinet ALTER a réitéré ses demandes de communication de documents (le 26 mars 2019, le 4 avril 2019, le 19 avril 2019 et le 14 mai 2019), il apparaît que la SAS OFFICE DEPOT FRANCE - au delà des demandes de communication rejetées supra - n'a pas satisfait aux demandes du cabinet ALTER tendant à la communication :
- des annexes au contrat de cession entre OD INC et AURELIUS d'Office DEPOT Europe, demande reformulée à l'audience par le cabinet ALTER, pour une plus grande précision, en

15

l'ensemble des documents annexés au contrat de cession d'OFFICE DEPOT EUROPE, entre OFFICE DEPOT INC. et AURELIUS,
- du détail des principaux investissements dans le plan de retournement prévisionnel à 3 ans, effectués sur les années 2016, 2017 et 2018 et le tableau de financement au 1er janvier 2017, soit l'ensemble du prévisionnel au moment de l'achat, et pas seulement le « *réalisé* »,
- des rapports des commissaires aux comptes avec leurs annexes, obligatoires dans les pays européens (comptes de résultat, bilan, affectation du résultat net notamment), pour les exercices 2016, 2017 et 2018 des sociétés holdings de OFFICE DEPOT FRANCE (Heteyo holding BV, Office Depot France Holding two BV, Office Depot France Holding BV, ODE Holding BV, OD Int UK Ltd, Office Depot Europe Holding Gmbh et Aurelius Equity Opportunity SE& Co),
- des prévisions de trésorerie jusqu'à fin 2019, sous la forme d'un document officiel de la direction d'OFFICE DEPOT FRANCE, soit un tableau prévisionnel de la trésorerie 2019,
- les rapports des commissaires aux comptes avec les annexes (comptes de résultat, bilan, affectation du résultat net notamment) pour les exercices 2016, 2017 et 2018 des sociétés du groupe AURELIUS suivantes : GTM et ECIT.

Entre le 15 mars 2019 et le 20 mai 2019, date à laquelle l'assignation a été signifiée à la société défenderesse, la SAS OFFICE DEPOT FRANCE a communiqué plusieurs documents versés aux débats. Néanmoins, elle n'a pas fourni les éléments ci-dessus mentionnés tandis que le cabinet ALTER a, à plusieurs reprises, renouvelé sa demande.

Par conséquent, l'absence de satisfaction apportée aux demandes du cabinet ALTER à l'occasion de l'exercice du droit d'alerte économique mis en œuvre le 6 février 2019 caractérise un trouble manifestement illicite occasionné aux activités du comité central d'entreprise auquel il convient de mettre un terme en ordonnant à la SAS OFFICE DEPOT FRANCE la communication, sous astreinte provisoire dans les conditions fixées au dispositif de la présente ordonnance, de l'ensemble des documents précités aux experts-comptables du Cabinet ALTER.

Il n'y a pas lieu de se réserver la liquidation de l'astreinte.

**Sur les questions formulées par le CCE et le cabinet ALTER**

A la faveur de l'exercice de son droit d'alerte, le CCE peut demander à l'employeur de lui fournir des explications, lesquelles doivent s'entendre au sens large c'est à dire tous éléments d'ordre économique, financier ou social nécessaires à l'intelligence des comptes et à l'appréciation de la situation économique de l'entreprise.

Il convient de rappeler qu'aux termes de l'article 809 du code de procédure civile, les mesures tendant à faire cesser le trouble manifestement illicite consistent en des mesures conservatoires ou de remise en état.

Aux termes de son acte introductif d'instance, le CCE de la société OFFICE DEPOT FRANCE demande au juge des référés d'ordonner à la société OFFICE DEPOT FRANCE, sous astreinte, de communiquer au cabinet d'expertise comptable ALTER les réponses (documents) aux questions suivantes, initialement posées par l'expert-comptable dans ses demandes d'informations actualisées figurant dans son rapport du 2 mai 2019 :

*Avec quelles autres sociétés du groupe AURELIUS, OFFICE DEPOT France a-t-elle conclu des contrats de prestations commerciales ?*

Dans son courrier du 10 juin 2019, le CCE de la société OFFICE DEPOT FRANCE souligne que la direction d'OFFICE DEPOT FRANCE aurait « *enfin avoué que les seules entités du périmètre Aurelius avec lesquelles OD France a conclu des contrats de prestations commerciales sont Getronics, GTM (marque OD), ECIT (informatique), Office Depot Service Center SRL et OD International BV* ».

Il s'en déduit qu'une réponse a ainsi été fournie par la direction de la société défenderesse dont l'analyse a déterminé le CCE à étendre sa demande de communication des rapports des

16

commissaires aux comptes pour les exercices 2016, 2017 et 2018, outre des sociétés ECIT et GTM visées dans l'assignation, mais encore des sociétés Getronics, OD International BV, OFFICE DEPOT Service Center SRL, demandes auxquelles il a été répondu précédemment. Cette demande de réponse apparaît donc désormais sans objet et il sera dit n'y avoir lieu à référé sur ce chef de demande.

*OFFICE DEPOT France a-t-elle remporté des contrats avec les sociétés du groupe AURELIUS*

Dans son courrier en date du 10 juin 2019, le CCE de la société OFFICE DEPOT FRANCE a indiqué que la SAS OFFICE DEPOT FRANCE avait « *maintenu la réponse fallacieuse selon laquelle AURELIUS ne possèderait pas de sociétés en France à l'exception d'OFFICE DEPOT FRANCE* » alors qu'il apparaîtrait dans le rapport d'AURELIUS 2018 que d'autres filiales en France sont détenues par AURELIUS.

Si le CCE de la société OFFICE DEPOT FRANCE invoque le caractère  « *erroné* » ou « *fallacieux* » des réponses apportées par la société défenderesse, il reste  qu'une telle allégation ne saurait permettre de caractériser l'existence d'un trouble manifestement illicite que le juge des référés pourrait faire cesser, tant il semble ne pouvoir entrer dans les attributions de ce dernier, juge de l'évidence et de l'incontestable, d'apprécier le caractère mensonger, loyal, fallacieux ou erroné des réponses apportées par un plaideur.

Au surplus, la juridiction de céans ne saurait enjoindre la SAS OFFICE DEPOT FRANCE de produire des documents susceptibles de donner réponse aux questions posées par le CCE sans qu'il lui soit indiqué - sous peine de sortir du champ de compétence qui est le sien - les pièces précisément sollicitées.

Il sera dit n'y avoir lieu à référé sur ce chef de demande.

*Quelle est la société avec laquelle AURELIUS était en pourparlers pour une éventuelle cession des sociétés OFFICE DEPOT Françaises*

Dans son rapport d'étape du 2 mai 2019, le cabinet ALTER a indiqué que lors de la rencontre du « *22 mars 2019 à Senlis, M. De Feydeau a déclaré qu'Aurelius avait tenté de céder l'année dernière les activités d'OD en France à un tiers potentiellement intéressé* » et a sollicité que soit porté à sa connaissance le nom de ladite société. La SAS OFFICE DEPOT FRANCE a fait valoir en réplique que ces pourparlers sont demeurés à l'état embryonnaire, et que s'il y avait eu des réflexions sur l'évolution possible de l'actionnariat de la société OFFICE DEPOT FRANCE, ces dernières n'avaient pas abouti.

Si la mission de l'expert-comptable, à l'occasion du droit d'alerte économique, consiste à apprécier la situation économique, financière, sociale et stratégique de l'entreprise, les pourparlers dont il est fait état n'ayant pas abouti, le refus de la SAS OFFICE DEPOT FRANCE de communiquer l'identité de la société avec laquelle AURELIUS était en négociation ne saurait être constitutif d'une violation évidente de la règle de droit et caractériser un trouble manifestement illicite, en l'absence d'invocation d'un document dont l'établissement serait obligatoire pour l'entreprise à la suite de ces pourparlers.

La demande de communication de ce chef doit donc être rejetée.

*Communication du courrier d'OFFICE DEPOT INC à OFFICE DEPOT suite à la cession de sa participation*

Il convient de relever que la SAS OFFICE DEPOT FRANCE a communiqué le 6 mai 2019 un document intitulé « *Confort letter 2014 OD inc* » du 17 novembre 2014. Sans plus d'informations quant au document sollicité par le CCE OFFICE DEPOT FRANCE, il convient d'en conclure que cet élément a déjà été fourni et dire n'y avoir lieu à référé sur ce chef de demande.

17

En définitive, il sera dit n'y avoir lieu à référé sur l'ensemble des demandes formulées par le CCE OFFICE DEPOT FRANCE tendant à enjoindre la SAS OFFICE DEPOT FRANCE de répondre aux questions précitées.

**Sur les autres demandes**

L'équité commande de condamner la SAS OFFICE DEPOT FRANCE à payer respectivement au comité central d'entreprise de la société OFFICE DEPOT FRANCE la somme de 2000 euros et à la société ALTER la somme de 1500 euros au titre de l'article 700 du code de procédure civile.

La SAS OFFICE DEPOT FRANCE sera condamnée aux entiers dépens de l'instance, en ce compris les frais de signification et d'exécution.

## PAR CES MOTIFS

**Nous, Arnaud BORZEIX, président du tribunal de grande instance de SENLIS, statuant en référé, par ordonnance contradictoire, mise à disposition au greffe et en premier ressort,**

**Déclarons** recevable l'intervention volontaire de la société ALTER ;

**Écartons** les écritures intitulées *« conclusions en réponse »* communiquées le 11 juin 2019 par la SAS OFFICE DEPOT FRANCE ;

**Disons** n'y avoir lieu d'enjoindre à la SAS OFFICE DEPOT FRANCE de produire un bordereau de communication de pièces plus amplement détaillé ;

**Disons** que l'absence de communication par la SAS OFFICE DEPOT FRANCE de plusieurs pièces réclamées par l'expert-comptable de la société ALTER dans le cadre de l'exécution de sa mission d'assistance du comité central d'entreprise de la société OFFICE DEPOT FRANCE au titre du droit d'alerte économique constitue un trouble manifestement illicite ;

**Ordonnons** à la SAS OFFICE DEPOT FRANCE, sous astreinte provisoire de 1000 euros par jour de retard et par document manquant, la communication au cabinet d'expertise-comptable ALTER des pièces suivantes :
- ensemble des documents annexés au contrat de cession d'OFFICE DEPOT EUROPE, entre OFFICE DEPOT INC et AURELIUS,
- détail des principaux investissements dans le plan de retournement prévisionnel à 3 ans, effectués sur les années 2016, 2017 et 2018 et le tableau de financement au 1er janvier 2017, soit l'ensemble du prévisionnel au moment de l'achat,
- rapports des commissaires aux comptes avec leurs annexes (comptes de résultat, bilan, affectation du résultat net notamment), pour les exercices 2016, 2017 et 2018 des sociétés holdings de OFFICE DEPOT FRANCE (Heteyo holding BV, Office Depot France Holding two BV, Office Depot France Holding BV, ODE Holding BV, OD Int UK Ltd, Office Depot Europe Holding Gmbh et Aurelius Equity Opportunity SE& Co),
- prévisions de trésorerie jusqu'à fin 2019, sous la forme d'un document officiel de la direction d'OFFICE DEPOT FRANCE, soit un tableau prévisionnel de la trésorerie 2019,
- rapports des commissaires aux comptes avec les annexes (comptes de résultat, bilan, affectation du résultat net notamment) pour les exercices 2016, 2017 et 2018 des sociétés du groupe AURELIUS suivantes : GTM et ECIT ;

**Disons** que cette astreinte courra à compter d'un **délai de quinze (15) jours suivant la signification de la présente ordonnance**, et pendant une période de trois mois ;

**Disons** qu'il appartiendra à la SAS OFFICE DEPOT FRANCE de justifier de l'exécution de son obligation pour la liquidation de l'astreinte provisoire ;

18

**Disons** n'y avoir lieu de nous réserver la liquidation de l'astreinte ;

**Disons** n'y avoir lieu à référé sur les autres chefs de demandes de communication de pièces formées par le comité central d'entreprise de la société OFFICE DEPOT FRANCE et la société ALTER ;

**Disons** n'y avoir lieu à référé sur la demande formulée par le comité central d'entreprise de la société OFFICE DEPOT FRANCE tendant à enjoindre à la SAS OFFICE DEPOT FRANCE de répondre à plusieurs questions ;

**Condamnons** la SAS OFFICE DEPOT FRANCE à verser au comité central d'entreprise de la société OFFICE DEPOT FRANCE la somme de 2000 euros en application des dispositions de l'article 700 du code de procédure civile ;

**Condamnons** la SAS OFFICE DEPOT FRANCE à verser à la société ALTER la somme de 1500 euros en application des dispositions de l'article 700 du code de procédure civile ;

**Rejetons** toute demande plus ample ou contraire ;

**Condamnons** la SAS OFFICE DEPOT FRANCE aux entiers dépens, en ce compris les frais de signification et d'exécution ;

**Rappelons** que l'exécution provisoire de la présente décision est de droit.

**LE GREFFIER**                    **LE PRÉSIDENT**

En conséquence, la République Française mande et ordonne à tous Huissiers de Justice sur ce requis de mettre le présent jugement à exécution. Aux Procureurs Généraux et aux Procureurs de la République près les Tribunaux de Grande Instance d'y tenir la main. A tous Commandants et Officiers de la Force Publique de prêter main forte lorsqu'ils en seront légalement requis. Pour GROSSE certifiée conforme, délivrée par Nous, le greffier en Chef du Tribunal de Grande Instance de Senlis, le 25/06/2019
Le Greffier en Chef

19

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT COURT OF FLORIDA**

IN RE APPLICATION OF )
the *Comité Economique et Social* )
*Central d'Office Depot France* )
                    )     AFFIDAVIT OF ACCURACY
                    )
         and            )
                    )
*Alter Expertises* )
                    )
pursuant to 28 U.S.C. § 1782 For )
Judicial Assistance in Obtaining )
Evidence From THE ODP )
CORPORATION For Use In a Foreign )
Tribunal )

I, PIERRE BOUVET, do hereby depose and state as follows:

1. I am over the age of twenty-one (21) and give this affidavit of my own free will. I make the statements contained in this Affidavit based on my personal knowledge and am competent to testify as to all facts stated herein.

2. I work as an independent translator from French to English and vice-versa.

3. I am fluent in English, and can read, write, and understand the same.

4. I am fluent in French, and can read, write, and understand the same.

5. I have extensive experience translating French documents into English.

6. I served as translator with respect to the translation of a documents entitled "Ordonnance de référé – CCE OFFICE DEPOT FRANCE" from French to English. A true and accurate copy of the original document attached hereto as <u>Exhibit A</u>.

7. A true and accurate copy of the translated documents is attached hereto as <u>Exhibit B</u>.

8. I make this Affidavit for the purpose of certifying that the English translation of the French interim order is a faithful translation from the French language. To the best of my knowledge, ability, and belief, the English translation is a true and accurate translation.

I hereby declare under the penalty of perjury that the foregoing is true and accurate and sign this affidavit on this day 11th of May, 2021

PIERRE BOUVET

# EXHIBIT 2

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**Washington, D.C. 20549**

---

# FORM 8-K

---

**CURRENT REPORT**
**PURSUANT TO SECTION 13 OR 15(d)**
**OF THE SECURITIES EXCHANGE ACT OF 1934**

**Date of Report (Date of Earliest Event Reported): May 5, 2021**

---

# THE ODP CORPORATION
**(Exact Name of Registrant as Specified in its Charter)**

---

| **Delaware** | **1-10948** | **85-1457062** |
|---|---|---|
| (State or Other Jurisdiction of Incorporation) | (Commission File Number) | (IRS Employer Identification No.) |

| **6600 North Military Trail, Boca Raton, FL** | **33496** |
|---|---|
| (Address of Principal Executive Offices) | (Zip Code) |

**(561) 438-4800**
(Registrant's Telephone Number, Including Area Code)

**Former Name or Former Address, If Changed Since Last Report: N/A**

---

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

☐    Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐    Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐    Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐    Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

Securities registered pursuant to Section 12(b) of the Act:

| Title of Each Class | Trading Symbol(s) | Name of Each Exchange on which Registered |
|---|---|---|
| **Common Stock, par value $0.01 per share** | **ODP** | **The NASDAQ Stock Market** (NASDAQ Global Select Market) |

Indicate by check mark whether the registrant is an emerging growth company as defined in Rule 405 of the Securities Act of 1933 (§ 230.405 of this chapter) or Rule 12b-2 of the Securities Exchange Act of 1934 (§ 240.12b-2 of this chapter).

Emerging growth company ☐

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. ☐